Tausig, Appellant, *v.* Lawrence, Secretary
of Commonwealth.

Argued October 14, 1937. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Douglass D. Storey,* of *Hause, Evans, Storey & Lick,* with him *John B. Pearson,* for appellant.

*Charles J. Margiotti,* Attorney General, with him *Edward Friedman,* Deputy Attorney General, for appellee.

PER CURIAM, October 14, 1937:

The Court is unanimously of opinion that the decree of the court below should be affirmed, and because of the necessity for prompt action now files this order. An opinion will be filed later expressing our views on the questions involved.

Decree affirmed at appellant's cost.

OPINION BY MR. CHIEF JUSTICE KEPHART, January 3, 1938:

The General Assembly at the regular session of 1935 adopted three proposals to amend the Constitution,[1] and at the special session of 1936 two additional pro-

---

[1] The proposals were: (1) to amend Article XIV, by the addition of section 8, permitting the consolidation of the governments of Philadelphia City and County; (2) to amend section 18 of Article III to authorize appropriations for adult blind persons, for mothers' assistance and for old-age pensions; (3) to amend section one of Article IX to restrict uniformity in taxation to "property taxes" and to permit income and excise taxes.

posals were adopted.[2]   The Secretary of the Common-wealth, by his deputy, prepared advertisements and distributed them to the newspapers of the State prior to August 3, 1936, with the direction that they be published for the first time on that date.   For various reasons these advertisements appeared in only 42 papers on or before the date fixed and were published in the others on subsequent dates, within the period of a week, with the exception of one in which the publication was not made until August 13.[3]   Thereafter the General Assembly at the regular session of 1937 agreed to the proposed amendments and directed that they be submitted to the people at the election in November 1937.   Appellant filed a taxpayer's bill on October 2, 1937, to restrain the Secretary of the Commonwealth from certifying the proposals to the county commissioners for printing on the ballots, on the ground that the publication of the advertisements in 1937 was in violation of Article XVIII, section 1 of the State Constitution.   The court

[2] These proposals were:   (4) to amend Section 1 of Article XVIII to permit publication of proposed amendments to the constitution three months before the municipal as well as general elections and eliminate the five year "time-lock" limitation on amendments;   (5) to amend Article IX by the addition of a new section authorizing a $42,000,000 bond issue for designated purposes.

[3] In 9 counties the advertisement appeared in 2 newspapers on or before August 3, 1936; in 20 counties only one newspaper carried the advertisement on that date; in 2, the first publication in both was on August 4; in 6, in one paper on August 4; in 8, the first publication was in one paper on August 5; in 9, the advertisement was first published in 2 papers on August 6; in 8, the advertisement appeared first in one paper on August 6; in 2, it was published first in 2 papers on August 7; in 2 others, one newspaper carried the first advertisement on August 7; in Lehigh County the second newspaper carried the notice for the first time on August 8; in Luzerne County this date was August 9; in Lancaster it was August 10; and in Schuylkill it was August 13. In Northampton, the first advertisement appeared on July 31, and the second on August 4.

below refused the preliminary injunction and dismissed the bill, whereupon this appeal was taken.

Article XVIII, section 1 of the Constitution of Pennsylvania provides inter alia: "Any amendment or amendments to this constitution may be proposed in the Senate or House of Representatives; and, if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, *and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published;* and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, *the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid;* and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; . . ." The court below held the provisions for publication were merely directory and therefore the advertisements were a substantial compliance with the constitutional direction. The ruling was based upon a dictum in *Commonwealth v. Griest,* 196 Pa. 396. The holding in that case must be strictly limited to the question it involved, whether or not the governor's approval was necessary to proposed amendments. It is true the Secretary there urged, as an additional defense to the mandamus to compel publication, that the next general election was less than three months off and therefore publication could not be made in compliance with Article XVIII, section 1, but this court held that the election contemplated would not occur until the following year, and the Secretary would have ample time for

publication. By so construing the section, the court disposed of this side issue; we did, by way of dicta, state that the advertisement provisions were directory. This statement was unnecessary to the decision of the case as we pointed out in *Armstrong v. King,* 281 Pa. 207, 216, and contrasts sharply with another statement in the *Griest* case at p. 405: "And that action of the secretary is prescribed in mandatory language, thus, 'And the Secretary of the Commonwealth shall cause the same to be published,' etc. He has no discretion in the premises. His action does not depend upon any other action whatever. It is his own, personal, individual and official duty, imperative in its character, and of the very highest and gravest obligation because it is imposed by the constitution itself, and he can only discharge that duty by literally performing its terms." *Armstrong v. King,* supra, suggests that the provisions may be directory, but the reference is also purely dictum, because the case was decided upon the point that the proposed amendment was improperly submitted. However in *Com. ex rel. v. King,* 278 Pa. 280, it was emphatically stated at p. 283: "The constitutional provision calling on the secretary of the Commonwealth to cause the second notice 'to be published in the manner aforesaid' means that the required notice *must* appear 'in at least two newspapers in every county' in which that course is possible, . . ."

The question of whether the advertising provisions are mandatory or directory has therefore never been squarely before this court and the solution must depend upon well-settled rules of constitutional construction rather than upon fragmentary dicta in prior decisions. See *Com. ex rel. v. Lawrence,* 326 Pa. 526, 530. In construing a statute, substantial compliance with detailed requirements as to the time in which an act may be done is frequently held sufficient, as long as the purpose of the act is effectuated, but a different attitude toward construction must be taken when procedural require-

ments of the constitution are under consideration. See I Cooley, Constitutional Limitations (8th ed., 1927), 159.[4] The purpose of Article XVIII, section 1, and the manner in which that purpose is expressed are clear and simple. We said, in *Com. ex rel. v. King,* supra, that the intention of the section was to afford the electorate abundant opportunity to be advised of proposed amendments and ascertain the attitude of the candidates for election to the General Assembly "next afterwards chosen" to the amendments. To withhold strict compliance with the three months' limitation and substitute a different method of advertisement which substantially accomplishes the desired result would be to rewrite the constitutional provision. It has in clear, specific language determined what must be done to change or amend the fundamental law. Nothing short of a literal compliance with this mandate will suffice. The Constitution has a more sacred position in judicial interpretation than does an act of assembly and judicial exploration should never have as its fulcrum the basic law. Otherwise a dangerous precedent would be created, by substituting the court's own pronouncement for the fundamental law of the State. To hold the advertising provisions do not require literal compliance would create the danger that other procedural steps required by the article may be modified or omitted entirely. No uncer-

---

[4] It is there said: "But the courts tread upon very dangerous ground when they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of a constitution. *Constitutions do not usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done,* . . . If directions are given respecting the times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only; and we impute to the people a want of due appreciation of the purpose and proper province of such an instrument, when we infer that such directions are given to any other end."

tainty or compromise is suggested by the phrase "and the Secretary of the Commonwealth *shall* cause the same to be published." Any period less than that prescribed by the section will not suffice.

Appellee insists that regardless of whether the advertising provision of the Constitution is mandatory or directory, there is a presumption that the Secretary of the Commonwealth, as a public officer, did all things required of him under the section, because the five proposals were adopted by the General Assembly at the next session subsequent to the first advertisement. It is argued that this presumption is irrebuttable and disposes of the question raised by the bill. *Perkins v. Philadelphia*, 156 Pa. 554, is cited to support this view. There the constitutionality of a special law was challenged under Article III, section 8, of the Constitution on the ground that notice had not been published in the locality affected, thirty days prior to the introduction of the bill. The court dismissed the objection on the strength of this presumption. That case involved a *statute,* which had been adopted and signed by the Governor, and is not directly apposite to the present problem. Furthermore, the broad rule of the conclusiveness of the presumption there announced was modified in *Chalfont v. Edwards,* 173 Pa. 246, involving a similar failure to advertise, where we held that the presumption of notice cannot prevail when notice is not given. Here it is admitted that the publication of the proposed amendments did not appear in several newspapers in the counties of the state on or before August 3rd, or three months before the next election. We will not presume the regularity of official acts when constitutional provisions are under consideration.

Did the Secretary of the Commonwealth comply with the constitutional provision? The answer depends entirely upon the meaning of the section and the actual conduct of the officer. The section provides that the Secretary of the Commonwealth "shall cause" the ad-

vertisement to be published. This does not require the Secretary himself to go into each county and personally publish the advertisement; he causes it to be published when he places it in the hands of the recognized media for publication in time to permit its insertion three months before the election, and with direction to publish before that time. The Secretary has a grave duty to perform in this regard and his failure, or that of his clerks or deputies, to carry out this mandate subjects them to criminal responsibility for nonfeasance or malfeasance in office. He cannot by such failure defeat the will of the people. The framers did not intend the Secretary of the Commonwealth should be responsible for the actual publication; he has no means of accomplishing this. Nor will the submission of a proposed amendment be frustrated by the neglect or refusal of one or more newspapers to publish within the time specified. To hold otherwise would render the adoption of amendments dependent on the action of newspapers, and if any of these should be opposed to them, it could frustrate their adoption. All the section commands is that the Secretary transmit the advertisements of the proposed amendment to the proper newspapers within sufficient time to enable them to be published at a date three months or more in advance of the election, with directions that they be so published. This is all the Secretary is required to do to effect publication under the section, and the section itself contains the complete and only method in which an amendment may be adopted. See *Com. ex rel. v. Lawrence,* supra. He should however, keep in his office a permanent record of all proposed amendments with a list of the newspapers that received the advertisements and the date received, so that the difficulty here encountered may be obviated.

It appears in this case, and was admitted at the bar of the court, that the Secretary, through his deputy, transmitted the required notices to two newspapers in each county of the state in ample time to permit their

insertion on or before August 3rd. The newspapers were directed to publish the advertisements before or on that date. It is conceded that if this was done the Secretary fully complied with the mandatory requirements of the section and satisfied this constitutional provision. With this definitely established, the fact that some of the advertisements were not published until a few days after this date does not affect the validity of the submission of the proposed amendments nor constitute a violation of the Constitution. The Secretary performed his duty when he, through his deputy, issued the advertisements and ordered their publication on time.

In one case the notices appeared in a Sunday paper. The advertising in such papers is ordinarily published on Saturday, but since they have in the past been regarded as improper for legal notices, perhaps a special edition should have been published to comply with the Secretary's direction. That the newspaper did not do so is not the fault of the Secretary, nor does it constitute a failure on his part to meet his constitutional duty.

One further point is raised by this appeal, and that is with reference to the delay of appellant in filing his bill to enjoin the submission of the amendments. Because of the intense importance to the people of the Commonwealth of matters affecting the amendment of their fundamental law, the doctrine of laches cannot be invoked to prevent the determination of the propriety of the submission of an amendment. This is particularly true because the law of this State prohibits inquiry into the validity of the steps preliminary to the adoption of an amendment after it has received the approval of the people and taken its place in the body of our Constitution. See *Armstrong v. King,* supra.

The judgment is affirmed.