865 A.2d 835

**Gerald C. GRIMAUD, John G. Bergdoll, and Matthew R. Battersby, Appellants,**

**v.**

**COMMONWEALTH of Pennsylvania, Honorable Yvette Kane, Secretary of the Commonwealth, Appellee,**

**John M. Perzel, Speaker of the House of Representatives and Senator Robert C. Jubelirer, President Pro Tempore of the Senate, Intervenors.**

**No. 126 MAP 2002.**

Supreme Court of Pennsylvania.

Argued May 11, 2004.

Decided Jan. 18, 2005.

400

402

Matthew R. Battersby, Esq., John G. Bergdoll, Esq., Gerald C. Grimaud, Esq., Fairfield, for et al Grimaud.

Gerald J. Pappert, Esq., J. Bart DeLone, Esq., John G. Knorr, III, Esq., Calvin R. Koons, Esq., John T. Henderson, Jr., Harrisburg, for Hon. Yvette Kane, Sec. of the Com.

Jason K. Cohen, Esq., Jonathan F. Bloom, Esq., C. Clark Hodgson, Esq., Philadelphia, for John Perzel, Speaker of the House and Senator Robert Jubelirer.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice EAKIN.

In the 1998 general election, the majority of the electorate approved amendments to Article I, § 6 (trial by jury) and Article I, § 14 (prisoners to be bailable; habeas corpus) of the Pennsylvania Constitution.

**Article I, § 14 (prisoners to be bailable; habeas corpus):**

Before amendment, Article I, § 14 provided:

All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it.

Pa. Const. art. I, § 14 (1997). In 1995, the General Assembly, seeking to amend this provision, passed Joint Resolution 1995–3:

Proposing an amendment to the Constitution of the Commonwealth of Pennsylvania, further providing for bail. The General Assembly of the Commonwealth of Pennsylvania hereby resolves as follows:

Section 1. The following amendment to the Constitution of Pennsylvania is proposed in accordance with Article XI: That section 14 of Article I be amended to read:

§ 14. Prisoners to be bailable; habeas corpus.

All prisoners shall be bailable by sufficient sureties, unless for capital offenses ~~for which the maximum sentence is death or life imprisonment~~ OR FOR OFFENSES FOR WHICH THE MAXIMUM SENTENCE IS LIFE IMPRISONMENT or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community when the proof is evident or presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it.

Joint Resolution No. 3, 1995, P.L. 1153, S.B. No. 12. In 1998, the General Assembly passed Joint Resolution 1998–1:

Proposing an amendment to the Constitution of the Commonwealth of Pennsylvania, further providing for bail. The General Assembly of the Commonwealth of Pennsylvania hereby resolves as follows:

Section 1. The following amendment to the Constitution of Pennsylvania is proposed in accordance with Article XI:

That section 14 of Article I be amended to read:

§ 14. Prisoners to be bailable; habeas corpus.

All prisoners shall be bailable by sufficient sureties, unless for capital offenses or for offenses for which the maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community when the proof is evident or presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it.

Joint Resolution No. 1, 1998, P.L. 1327, H.B. No. 1520. The Attorney General prepared a "plain English statement" and the proposed amendment was published. The amendment was submitted to the electorate, which voted in favor of it.

**Article I, § 6 (trial by jury):**

Before amendment, Article I, § 6 stated:

Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case.

Pa. Const. art. I, § 6 (1997). In 1996, the General Assembly passed Joint Resolution 1996–1:

Proposing an amendment to the Constitution of the Commonwealth of Pennsylvania, further providing for trial by jury and waiver of this right. The General Assembly of the Commonwealth of Pennsylvania hereby resolves as follows: Section 1. The following amendment to the Constitution of Pennsylvania is proposed in accordance with Article XI: That Article I, section 6, be amended to read: THAT SECTION 6 OF ARTICLE I BE AMENDED TO READ:

§ 6. Trial by Jury.

Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less

than five-sixths of the jury in any civil case. Furthermore, in criminal cases ~~the accused may waive the right to a jury trial only with the consent of the Commonwealth.~~ THE COMMONWEALTH SHALL HAVE THE SAME RIGHT TO TRIAL BY JURY AS DOES THE ACCUSED.

Joint Resolution No. 1, 1996, P.L. 1545, S.B. No. 752. In 1998, the General Assembly passed Joint Resolution 1998–2, which stated:

Proposing an amendment to the Constitution of the Commonwealth of Pennsylvania, further providing for trial by jury. The General Assembly of the Commonwealth of Pennsylvania hereby resolves as follows:

Section 1. The following amendment to the Constitution of Pennsylvania is proposed in accordance with Article XI: That section 6 of Article I be amended to read:

§ 6. Trial by jury.

Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case. <u>Furthermore, in criminal cases the Commonwealth shall have the same right to trial by jury as does the accused.</u>

Joint Resolution No. 2, 1998, P.L. 1328, S.B. No. 555. The Attorney General prepared a "plain English statement" and the proposed amendment was published. The amendment was submitted to the electorate, which voted in favor of it.

Appellants filed a complaint in the Commonwealth Court seeking a declaration that the amendments were invalid, alleging: (1) each ballot question actually proposed multiple amendments in violation of Article XI, § 1; (2) the Attorney General's "plain English statement" regarding each ballot question failed to adequately set forth the purpose, limitations, and effects of each amendment as required by 25 P.S. § 2621.1; and (3) the General Assembly failed to comply with constitutional requirements for voting on the Joint Resolutions, precluding submission of the amendments to the electorate.

The parties filed cross-motions for summary judgment; the Commonwealth Court, sitting *en banc,* found the amendments valid. *Grimaud v. Commonwealth,* 806 A.2d 923, 925 (Pa. Cmwlth.2002). Granting the Commonwealth's motion, the court explained the jury trial and bail questions each constitute a single amendment because they serve one core purpose and effectuate one substantive change; the "plain English statement" sufficiently explained the purpose, limitations, and effects of the amendments; the joint resolutions were passed in two successive sessions of the General Assembly; and the General Assembly utilized proper procedures in passing the joint resolutions. *Id.,* at 929, 930, 934–35.

### Article I, § 14

Appellants argue the bail question violated Article XI, § 1 of the Pennsylvania Constitution because it twice amended Article I, § 14 by (1) expanding the capital offenses bail exception to include life imprisonment, and (2) adding preventive detention to the purpose of bail. Article XI, § 1 establishes the procedure for the General Assembly's proposal of amendments and the electorate's adoption, requiring that "[w]hen two or more amendments shall be submitted they shall be voted upon separately." Pa. Const. art. XI, § 1. The bail ballot question presented to voters stated:

> Shall the Pennsylvania Constitution be amended to disallow bail when the proof is evident or presumption great that the accused committed an offense for which the maximum penalty is life imprisonment or that no condition or combination of conditions other than imprisonment of the accused will reasonably assure the safety of any person and the community?

Complaint, 10/19/98, at Exhibit A; R.R., at 84a.

■ The first question is what standard is applicable in determining whether the changes were properly presented as a single question. This Court's decision in *Pennsylvania Prison Society v. Commonwealth,* 565 Pa. 526, 776 A.2d 971 (2001) (plurality), resulted in no clear majority on the standard to apply. We are persuaded by Justice Saylor's concurrence

suggesting "a subject-matter focus to determine whether alterations are sufficiently interrelated to justify their presentation to the electorate in a single question." *Id.,* at 984 (Saylor, J., concurring, joined by Castille and Newman, JJ.). Persuasive authority comes from other jurisdictions which have utilized

a single-subject test and examined the interdependence of the proposed constitutional changes in determining the necessity for separate votes. *See, e.g., Korte v. Bayless,* [16 P.3d 200, 203–05] (Ariz.2001) (explaining a "common-purpose formulation" to inquire into whether the proposed amendments are sufficiently related to "constitute a consistent and workable whole on the general topic embraced"); *Clark v. State Canvassing Bd.,* [888 P.2d 458, 462] (N.M. 1995) (applying a "rational linchpin" of interdependence test); *Sears v. State,* [208 S.E.2d 93, 100] (Ga.1974) (inquiring into whether all of the proposed changes "are germane to the accomplishment of a single objective") (quotations and citations omitted); *Fugina v. Donovan,* [104 N.W.2d 911, 914] (Minn.1960) (upholding separate propositions that, although they could have been submitted separately, were rationally related to a single, purpose, plan, or subject).

*Id.,* at 984 n. 1; *see also Manduley v. Superior Court,* 27 Cal.4th 537, 117 Cal.Rptr.2d 168, 41 P.3d 3, 28 (2002) (various provisions must be reasonably related to common theme or purpose); *Fine v. Firestone,* 448 So.2d 984, 990 (Fla.1984) (amendment must manifest "a logical and natural oneness of purpose . . .").

■ Although we are not bound by these decisions, we find them persuasive, and adopt the "subject matter test" for determining whether a ballot question violates Article XI, § 1. Here, after examining the ballot question, we conclude the proposed changes were related to a single subject, bail. The changes were sufficiently interrelated (all concerned disallowance of bail to reinforce public safety) to justify inclusion in a single question. Thus, the Commonwealth Court did not err in concluding the ballot question did not violate the separate vote requirement of Article XI, § 1.

Appellants also assert the single ballot question implicitly amended: (1) Article I, § 1's right to defend one's self, by restricting the ability to prepare a defense; (2) Article I, § 9's presumption of innocence, because preventive detention requires a presumption the accused will commit additional crimes if released on bail; (3) Article I, § 13's right to be free from excessive bail, because preventive detention essentially eliminates that right; and (4) Article I, § 25's reservation that Article I rights remain inviolate, because preventive detention punishes without trial and conviction, violating Article I, § 9.

■■ We analyze the ballot question's substantive affect on the Constitution, examining the content, purpose, and effect. *Pennsylvania Prison Society,* at 980. Here, the Commonwealth Court properly noted that merely because an amendment "may possibly impact other provisions" does not mean it violates the separate vote requirement. *Grimaud,* at 930. The test to be applied is not merely whether the amendments might touch other parts of the Constitution when applied, but rather, whether the amendments *facially* affect other parts of the Constitution. Indeed, it is hard to imagine an amendment that would not have some arguable effect on another provision; clearly the framers knew amendments would occur and provided a means for that to happen. The question is whether the single ballot question patently affects other constitutional provisions, not whether it implicitly has such an effect, as appellants suggest.

■ The bail amendments do not substantively affect the right to defend one's self, the right to be free from excessive bail, or the reservation that Article I rights remain inviolate. The argument concerning the amendment of Article I, § 9's presumption of innocence lacks merit because the "presumption" language is the same now as it was prior to the amendments. *See* Pa. Const. art. I, § 14 (1997). Because the proposed amendments only patently affected Article I, § 14, regarding when bail is disallowed in criminal cases, and no other part of the Constitution, the Commonwealth Court did

not err in concluding the single bail ballot question was properly submitted to the electorate.

■ Appellants contend the Attorney General's "plain English statement" did not adequately set forth the purpose, limitations, and effects of the bail ballot question. Section 201.1 of the Pennsylvania Election Code provides, in relevant part, as follows:

> Whenever a proposed constitutional amendment or other Statewide ballot question shall be submitted to the electors of the Commonwealth in referendum, the Attorney General shall prepare a statement in plain English which indicates the purpose, limitations and effects of the ballot question on the people of the Commonwealth.

25 P.S. § 2621.1. Here, the Attorney General's statement explained:

> The purpose of the ballot question is to amend the Pennsylvania Constitution to add two additional categories of criminal cases in which a person accused of a crime must be denied bail. Presently, the Constitution allows any person accused of a crime to be released on bail unless the proof is evident or presumption great that the person committed a capital offense. A capital offense is an offense punishable by death. The Pennsylvania Supreme Court has ruled that a person accused of a crime that is not a capital offense may be denied bail only if no amount or condition of bail will assure the accused's presence at trial.

> The ballot question would amend the Constitution to disallow bail also in cases in which the accused is charged with an offense punishable by life imprisonment or in which no condition or combination of conditions other than imprisonment of the accused will reasonably assure the safety of any person and the community. The ballot question would extend to these two new categories of cases in which bail must be denied the same limitation that the Constitution currently applies to capital cases. It would require that the proof be evident or presumption great that the accused committed the crime or that imprisonment of the accused is

necessary to assure the safety of any person and the community.

The proposed amendment would have two effects. First, it would require a court to deny bail when the proof is evident or presumption great that the accused committed a crime punishable by death or life imprisonment. Second, it would require a court deciding whether or not to allow bail in a case in which the accused is charged with a crime not punishable by death or life imprisonment to consider not only the risk that the accused will fail to appear for trial, but also the danger that release of the accused would pose to any person and the community.

Complaint, 10/19/98, at Exhibit A; R.R., at 84a. Appellants contend the sum of the Attorney General's statement (1) identified the purpose of the ballot question as disallowing bail to persons charged with crimes punishable by life imprisonment and to persons deemed dangerous, and (2) stated the effect of the amendment was to deny bail to those people. Further, the statement identified the limitations as being the same for persons charged with crimes punishable by life imprisonment and persons deemed dangerous as for those accused of capital offenses. Appellants, relying on standards set forth in the Commonwealth Court's decision in *Pennsylvania Prison Society,* which was reversed by this Court, believe the electorate should have been told the most significant reason for preventive detention is flight risk, and that this Court observed preventative detention: (1) would incarcerate for future offenses rather than punish for past offenses; (2) presumes the accused is guilty rather than innocent; (3) presumes the accused will commit additional crimes if released on bail; and (4) contravenes the purpose of bail for the accused to prepare for trial. *See Commonwealth v. Truesdale,* 449 Pa. 325, 296 A.2d 829, 836 (1972). Appellants also assert the implied effect on Article I, §§ 1, 9, 11, and 25 was not addressed in the statement.[1] Finally, appellants allege the

---

1. As we find the amendment did not facially affect Article I, §§ 1, 9, 11, and 25, we need not further address this challenge.

Attorney General's discussion of the public protection facet of preventive detention was insufficient.

"[T]he duties of the Attorney General do not include providing an in depth illustration of how a proposed amendment to the constitution may affect the public." *Lincoln Party v. General Assembly*, 682 A.2d 1326, 1332 (Pa.Cmwlth. 1996). Although not bound by this decision, we find it insightful. A comprehensive recitation of all ramifications of a constitutional amendment is not the goal of this summary— such a comprehensive consideration lies in the legislative history. The Attorney General is to present a "statement," not a treatise. The Attorney General here provided a sufficient explanation of the purpose, limitations, and effects of the bail amendment and thus, complied with the statutory requirements.

Appellants argue the bail ballot amendment should be found null and void because the General Assembly's Joint Resolutions published in 1996 and 1998, proposing to amend Article I, § 14, were not the same and competent, as required by Article XI, § 1.[2] Appellants concede the 1998 resolution

2. Article XI, § 1, in part, states:

§ 1. Proposal of Amendments by the General Assembly and their adoption

Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years.

was competent, but assert the 1996 resolution was contradictory and incomprehensible because of the strikethroughs and underlines indicating deleted and inserted language. Specifically, the phrase, "for which the maximum sentence is death or life imprisonment," appeared underlined and struck through in the 1996 resolution, but was never part of the pre-amendment version of Article I, § 14. Appellants contend this misled the General Assembly to believe Article I, § 14 contained such language.

Article XI, § 1 provides a complete and detailed process for amending the Constitution. *Kremer v. Grant*, 529 Pa. 602, 606 A.2d 433, 436 (1992). This section, however, does not address the format of Joint Resolutions. To that extent, the General Assembly has enacted legislation concerning the issue:

> Bills or joint resolutions introduced in the General Assembly proposing amendments to the Constitution of Pennsylvania shall be printed in such a manner as to indicate the words to be added to or deleted from the Constitution.

1 Pa.C.S. § 901; *see also* 101 Pa.Code § 9.22(b) (omitted language within brackets and added language underscored). Although the editorial marks in the 1996 resolutions may not technically comply with the required format, they do not render the resolution incomprehensible.

■■■■■ Regarding the differences between the 1996 and 1998 resolutions, the same amendment was agreed upon by the General Assembly in two successive legislative sessions. The language of the resolutions was identical and followed a natural progression of not including the struckthrough language from Joint Resolution 1995–3 in Joint Resolution 1998–1. No constitutional violation exists because "[a]rticle XI does not require identical language or content in the *resolutions* (as opposed to the proposed amendment itself). . . ." *Mellow v. Pizzingrilli*, 800 A.2d 350, 359 (Pa.Cmwlth.2002) (emphasis in original). Here, where the language was identical and the format was reasonably close to enable the electorate to understand it, there was no violation.

Pa. Const. art. XI, § 1; R.R., at 22a.

*Article I, § 6*

Appellants argue the question pertaining to Article I, § 6 violated the separate vote requirement of Article XI, § 1 by proposing two or more amendments. The ballot question stated:

> Shall the Pennsylvania Constitution be amended to provide that the Commonwealth shall have the same right to trial by jury in criminal cases as does the accused?

Complaint, 10/19/98, at Exhibit A; R.R., at 84a. Appellants contend the amendment amended not only Article I, § 6, but also Article V, § 10(c) (judicial administration), and Article I, § 25 (reservation of rights in people). Appellants argue Article V, § 10(c) is amended because the authority to govern jury waiver is taken from this Court. We fail to see merit in this position; the amendment does not substantially change judicial rule-making power. This Court has declared the jury trial amendments to Article I, § 6 constitutional. *Commonwealth v. Tharp*, 562 Pa. 231, 754 A.2d 1251, 1254 (2000). Appellants also contend the amendment affects Article I, § 25, asserting the original purpose of a jury trial was to prevent oppression by the government, but the amendment has changed this purpose by giving the Commonwealth the right to a jury trial.

Applying the test previously discussed, the amendment does not facially affect other parts of the Constitution. *See Pennsylvania Prison Society*, at 980. Only one substantive change is made, that is, to give the Commonwealth the right to trial by jury. Thus, the Commonwealth Court did not err in concluding the single jury trial ballot question was properly submitted to the electorate.

Appellants challenge the adequacy of the Attorney General's "plain English statement," which explained:

> The purpose of the ballot question is to amend the Pennsylvania Constitution to give the Commonwealth, as representative of the people and the victim, the same right to a jury trial in criminal cases as is currently given to the accused. Beginning in 1935, Pennsylvania law provided that the accused in a criminal case could waive his or her right to a

jury trial as long as both the court and the Commonwealth consented. Because the accused could be tried without a jury only if the Commonwealth consented, the Commonwealth had the same right to a jury trial as did the accused.

With the constitutional amendments of 1968, the Pennsylvania Supreme Court was given the authority to issue rules of procedure. In 1968, the Supreme Court adopted a rule of criminal procedure that continued the statutory practice requiring the Commonwealth's consent when an accused waives the right to a jury trial. In 1973, however, the Supreme Court amended the rule to remove the need for the Commonwealth's consent which took away from the Commonwealth the same right to a jury trial that is given to the accused.

In 1977, the Pennsylvania General Assembly enacted law that returned to the Commonwealth the same right to a jury trial that is given to the accused, but the Pennsylvania Supreme Court declared the 1977 law unconstitutional because it conflicted with the 1973 amendment to the Court's procedural rule.

The effect of the ballot question would be to restore the law to what it was prior to the Supreme Court's 1973 rule, namely, that the Commonwealth would have the same right to a jury trial in a criminal case as does the accused, which is also consistent with federal law. The right of an accused to a jury trial would not be affected by the proposed amendment.

A limitation on the proposed amendment is that it would give the Commonwealth no greater a right to a jury trial than is given to the accused.

Complaint, 10/19/98, at Exhibit B; R.R., at 84a. Appellants complain the statement is: (1) not objective because the Attorney General cites supportive federal law; (2) inaccurate in paragraph one because the Commonwealth represents the people, not the victim; and (3) inaccurate in paragraph two because the accused could waive the right to a jury trial

before and after 1935.[3] Appellants further assert the statement failed to inform the electorate:

> [T]he jury amendment will fundamentally change Pennsylvania's Constitutional scheme (i) by identifying government power as a right, (ii) by placing government power in Article I, rather than in a subsequent, Frame of Government Article[,] and (iii) by equating and juxtaposing the rights of an individual with the power of government prosecutors, despite Article I, Section 25 (Reservation of Rights in the People); the Attorney General fails to inform the electorate that the purpose and effect is to change the purpose of a jury, to empower the government to force a jury on the accused even when the accused believes he cannot have a fair trial with a jury; the Attorney General fails to inform the electorate that the purpose and effect is to shift discretion away from the trial court (Pa.R.Cr[im].P.1101) to the prosecutor to require a jury trial; and, the Attorney General fails to inform the electorate that Article I[,] § 7 (Free press and speech; libels), § 9 (Rights of accused in criminal prosecutions), [§ ] 25 (Reservation of rights in the people) and Article V[,] § 10(c) (Judicial administration) are effected by an affirmative vote on the ballot question.

Appellants' Brief, at 54–55 (footnotes omitted). As stated previously, an in-depth illustration of how the proposed amendment will affect the public is not required in the "plain English statement." The Attorney General's statement sufficiently informed the electorate of the purpose (to give the Commonwealth the same right to a jury trial as the accused), the limitation (to give the Commonwealth no greater right than the accused), and the effect (a restoration of the law prior to this Court's 1973 rule, consistent with federal law, that the Commonwealth would have the same right to a jury trial in a criminal case as does the accused).

 Appellants question the competency of the 1996 resolution proposing amendment of Article I, § 6, and whether it was the same amendment proposed in the 1998 resolution.

---

3. *Cf. Commonwealth v. Robinson*, 317 Pa. 321, 176 A. 908, 911 (1935) ("A defendant in a criminal case cannot waive trial by jury.").

The phrase, "the accused may waive the right to a jury trial only with the consent of the Commonwealth," was struckthrough and underlined in the 1996 resolution, but omitted from the 1998 resolution. Once again, there was no violation of Article XI, § 1 where the same jury trial amendment was passed by the General Assembly in 1996 and 1998. The language of the resolutions was identical and followed a natural progression of not including the struckthrough language from Joint Resolution 1996–1 in Joint Resolution 1998–2. No violation existed where the language was identical and the format was sufficiently similar to allow everyone to understand it.

■ Appellants allege the House of Representatives failed to comport with Article XI, § 1 when it voted on the final passage of the 1998 Joint Resolution proposing amendment of Article I, § 6. Specifically, Article XI, § 1 requires the proposed amendment be entered on the legislative journals with the yeas and nays taken.

■ Here, Article XI, § 1 sets forth a fairly comprehensive procedure for amending the Constitution, but is silent on the manner of how legislative votes should be conducted. *Cf.* Pa. Const. art. II, § 12 ("[T]he yeas and nays of the members on any question shall, at the desire of any two of them, be entered on the journal."). "Other than the express requirements set forth in Article XI, the procedure to be used in proposing such amendments is exclusively committed to the legislature." *Mellow*, at 359. The plain language of Article XI, § 1 speaks only of entering the proposed amendment on the legislative journals and not of the procedure that must be employed in so doing. As the Constitution does not regulate the manner in which the legislature approves amendments, no constitutional violation exists. The Constitution's lack of guidance reflects an intent to defer the choice of procedure to the legislature. "A challenge to the Legislature's exercise of a power which the Constitution commits exclusively to the Legislature presents a non-justiciable 'political question'." *Sweeney v. Tucker*, 473 Pa. 493, 375 A.2d 698, 705 (1977).

 Because the plain language of Article XI, § 1 does not require the legislature to engage in a specific procedure while proposing amendments, we will not inquire into these internal procedures nor look beyond the recorded votes, for judicial review is precluded pursuant to the Political Question Doctrine.[4]

The Commonwealth Court committed no error in granting the Commonwealth's motion for summary judgment and denying appellants' motion for summary judgment.

Order affirmed.

Chief Justice CAPPY files a concurring and dissenting opinion in which Justice NIGRO and BAER join.

Chief Justice CAPPY, concurring and dissenting.

Today, the majority dilutes the heretofore strict and mandatory "separate vote" requirement contained in Article XI, Section 1 of our Constitution. It does so to the detriment of the citizens of our Commonwealth. Indeed, the majority's adoption of the "subject matter test" is not only inconsistent with the plain language of the Constitution, but also with the Framers' intent as to how to safeguard the citizenry with respect to the amendment of that social compact, and our six-year-old decision in *Bergdoll v. Kane*, 557 Pa. 72, 731 A.2d 1261 (1999). In adopting this test, the majority dispossesses the voters who may wish to amend certain facets of our fundamental law, but not others, of the right to do so, and instead, encumbers them with a Hobson's choice between accepting all proposed amendments or none of them. Accordingly, while I concur as to the result reached by the majority regarding the constitutionality of the amendment to Article I, Section 6, I respectfully dissent as to the analytical framework embraced by the majority and to its conclusions regarding the constitutionality of the amendment to Article I, Section 14 of our Constitution.

---

4. We note the Enrolled Bill Doctrine is inapplicable to preclude judicial review where constitutional procedures are implicated. *See City of Philadelphia v. Commonwealth*, 575 Pa. 542, 838 A.2d 566, 580–81 (2003).

Article XI, Section 1 of the Pennsylvania Constitution sets forth the process and requirements for the proposal of amendments to our Constitution by the General Assembly and their ultimate adoption, or rejection, by the citizenry. With respect to these provisos, our Court has made it abundantly clear that, "no departures from or circumventions or violations of existing mandatory constitutional amendment requirements will be permitted," *Stander v. Kelley*, 433 Pa. 406, 250 A.2d 474, 479 (1969), and "[n]othing short of literal compliance with the mandate will suffice." *Kremer v. Grant*, 529 Pa. 602, 606 A.2d 433, 436 (1992)(quoting *Tausig v. Lawrence*, 328 Pa. 408, 197 A. 235, 238 (1938)). In sum, our Constitution requires that the General Assembly must comply literally with the mandatory requirements of Article XI, Section 1.

The majority, however, has ignored these mandates with respect to Article XI, Section 1's requirement that "[w]hen two or more amendments shall be submitted they shall be voted upon separately." PA. CONST. art. XI, § 1. It is the majority's interpretation of this "separate vote" provision with which I take issue in this appeal. The object in interpreting a constitutional provision is to "give full effect to the intent of its framers and the people in adopting it." *Commonwealth ex rel. Tate v. Bell*, 145 Pa. 374, 22 A. 641, 643 (1891). The framer's intent, as well as the intent of the citizenry in adopting the provision, can be ascertained from the language of the Constitution itself. *Tate*, 22 A. at 643 (offering that the intent is to be sought for in the instrument itself and "if the words convey a definite meaning, involving no absurdity or conflict with other portions of the instrument, that meaning which is apparent on its face must be adopted"). In construing the language, the Constitution is not to receive a technical or strained construction, but rather, the words should be interpreted in their popular, natural, and ordinary meaning. *Id.*

Here, the language of the Constitution setting forth the requirements for legislative amendment could not be clearer. Article XI, Section 1 unambiguously and plainly requires

separate ballot questions for separate amendments to our Constitution.

Furthermore, in interpreting a constitutional provision, a court also may consider the circumstances attending its formation and the construction probably placed upon it by the people. *Tate,* 22 A. at 643. A review of the debates surrounding the adoption of the "separate vote" requirement confirms this plain meaning interpretation approach to Article XI, Section 1. Specifically, the convention debates from 1838 disclose that the reason for this part of the amendment provision is to ensure that our citizenry is fully informed of the proposed amendments to the Constitution, easily understands the amendments, and is able to vote on the various amendments separately.[1] The Framers, therefore, intended for Article XI, Section 1 to guarantee that the voters may express their desires with respect to *each* constitutional amendment separately so that voters who favor only one out of two proposed amendments are not placed in a situation in which they have to accept either both amendments or no amendment at all. Thus, the focal point of Article XI, Section 1 clearly is to grant the voter the greatest freedom to decide upon amendments to our fundamental law; and this may only be achieved by a literal and plain meaning interpretation and approach to Section 1.

We took this approach to Article XI, Section 1 a scant six years ago in our 1999 decision in *Bergdoll.* In *Bergdoll,* our Court strictly interpreted Section 1's requirement, based upon the plain language of the section. In that appeal, our Court found the proposed amendment at issue to violate Section 1. Our focus in *Bergdoll* was two-fold. First, we analyzed how many ways the ballot question at issue would change the

---

1. *See, e.g.,* comments of Senator John Fuller of Fayette County suggesting that only one amendment be submitted to the people at one and the same time due to the fear that if two or more amendments were submitted at the same time, "one of which may be acceptable to the people, and the other not so. In such an event, an opportunity ought to be given to them to take the one and reject the other." 12 PROCEEDINGS AND DEBATES OF THE CONVENTION OF THE COMMONWEALTH OF PENNSYLVANIA TO PROPOSE AMENDMENTS TO THE CONSTITUTION, 50 (1839).

Constitution. We concluded that the ballot question would change the Constitution in two ways and that it encompassed amendments to two articles of the Constitution. Second, we reviewed whether the ballot question permitted the electorate to vote separately upon each of the amendments. As it did not, we found the ballot question violated Article XI, Section 1. *Bergdoll*, 731 A.2d at 1270 (stating that when a ballot question encompasses multiple amendments, it does "not permit the electorate to vote separately upon each of the amendments in violation of Article XI, § 1.").

In engaging in this analysis, the Court in *Bergdoll* implicitly eschewed a more liberal approach which would have focused upon the "interrelatedness" of the amendments to a "single subject." This "interrelatedness" approach was expressly argued by the Commonwealth in *Bergdoll*, Commonwealth's Brief at pp. 17–20, and proffered by a single concurring Justice, who echoed the position voiced by Judge Pelligrini in his dissent in the Commonwealth Court below. *Bergdoll*, 694 A.2d 1155, 1159 (Pa.Cmwlth.1997). It is no different from the "subject matter test" embraced by the majority today. Yet, we did not adopt this approach in *Bergdoll*. This is because the literal and plain meaning approach employed by us in *Bergdoll* was inconsistent and irreconcilable with this "interrelatedness" approach advocated by the Commonwealth and the concurrence.[2]

Finally, and contrary to the approach taken by the Court in *Bergdoll*, the majority's approach will make constitutional

2. As the interrelatedness approach—expressly before the Court in *Bergdoll*—was not adopted in that decision, and because such an approach is clearly inconsistent with the *Bergdoll* Court's analytical construct, the approach that was taken in *Bergdoll* represents binding precedent from this Court. The doctrine of *stare decisis* requires adherence to recent decisions as precedential authority. *See Burke v. Pittsburgh Limestone Corp.*, 375 Pa. 390, 100 A.2d 595 (1953). It ensures predictability and stability in the affairs of government and people and it is essential to the rule of law. While the doctrine may be disregarded when faced with an unsupportable or erroneous holding, or where the reason for a rule of law no longer exists and application would cause injustice, *see Ayala v. Phila. Bd. of Pub. Educ.*, 453 Pa. 584, 305 A.2d 877, 888–89 (1973), notably absent from the majority opinion are any reasons why the approach in *Bergdoll* is no longer supportable or erroneous. Indeed, the majority fails even to mention *Bergdoll*.

amendment a guessing game as to the predilections of a majority of Justices regarding just how "sufficiently interrelated" amendments need to be to pass constitutional muster. *See Kerby v. Luhrs*, 44 Ariz. 208, 36 P.2d 549, 554 (Ariz.1934)(adopting interrelatedness approach, but acknowledging that while certain states agree upon the principle to be used, they "differ widely as to the result reached in its application to particular cases.").

Application of the straightforward and proper approach— the one mandated by the terms of Article XI, Section 1, the Framers' intent, and *Bergdoll*—to the amendments at issue, leads to the conclusion that while the proposed amendment to Article I, Section 6 (Trial by Jury) does not present separate amendments,[3] the proposed amendments to Article I, Section 14 (Prisoners to be Bailable; Habeas Corpus) violate Article XI, Section 1. Specifically, the bail ballot question sought to disallow bail upon proof or presumption that the accused **either** committed an offense for which the maximum penalty is life imprisonment **or** that no condition or conditions other than imprisonment would assure the safety or a person or the community. Ballot Question Regarding Joint Resolution 1998–1 (emphasis supplied).

Based upon the above amendment, it becomes clear that the proposal contains two distinct amendments: (1) disallow bail for those accused of a crime for which the maximum penalty is life imprisonment and (2) disallow bail for those who are a safety risk to any person and the community. *See Commonwealth v. Truesdale*, 449 Pa. 325, 296 A.2d 829, 835–36 (1972). By combining these two amendments into a single ballot question, the voter is confronted with an impossible and unconstitutional Hobson's choice if he or she believes that bail should be disallowed only for those individuals facing life

---

**3.** I find, however, the majority's analysis regarding the implicit impact of an amendment upon other constitutional provisions to be hopelessly vague and therefore largely unhelpful, as it offers three different, and seemingly inconsistent, inquiries, i.e., whether the proposed amendments "facially" affect, "patently" affect, and/or "substantively" affect, other parts of the Constitution. Majority Opinion op. at p. 842, 842, and 845.

imprisonment or conversely, only for those who are a safety risk. This is precisely the danger that the framers intended to eliminate in Article XI, Section 1, and the danger that the majority's "single subject test" disregards today.

In sum, for all of the above reasons, while I find the amendment to Article I, Section 6 to be constitutional, I respectfully dissent to the framework utilized by the majority, as well as its conclusion that Article I, Section 14 passes the "separate vote" requirement of Article XI, Section I.

Justice NIGRO and BAER join this concurring and dissenting opinion.