**[J-48-2021] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA AND LORRAINE HAW | : | No. 4 MAP 2021 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court No. 578 MD |
| v. | : | 2019 dated January 7, 2021. |
| | : | |
| | : | ARGUED: September 21, 2021 |
| VERONICA DEGRAFFENREID AS ACTING SECRETARY OF THE COMMONWEALTH | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: SHAMEEKAH MOORE, MARTIN VICKLESS, KRISTIN JUNE IRWIN AND KELLY WILLIAMS | : | |
| | : | |

**DISSENTING OPINION**

**JUSTICE MUNDY** **DECIDED: December 21, 2021**

Before this Court is a direct appeal from the January 7, 2021 order of the Commonwealth Court, which permanently enjoined the Secretary of the Commonwealth from certifying the votes of the public electorate with regards to a proposed amendment to Article I of the Pennsylvania Constitution. The Commonwealth Court entered the injunction on the basis that the submission of the proposed amendment to the electorate as a single ballot question violated the requirement of Article XI, Section 1 of the Constitution that "[w]hen two or more amendments shall be submitted they shall be voted upon separately." PA. CONST. art. XI, § 1. Upon review, I would hold that the submission of the proposed amendment to the electorate as a single ballot question was proper. The changes in the proposed amendment are specifically and narrowly tailored to fulfill the singular common objective of establishing for victims of crime justice and due process in

the criminal and juvenile justice systems, and do not substantively change any other existing provisions of the Constitution. Therefore, I must respectfully dissent from the Opinion of the Majority which holds otherwise.

By way of background, in June 2019 the General Assembly adopted Joint Resolution 1 of 2019. The Joint Resolution resolves to amend Article I of the Constitution, which sets forth a "Declaration of Rights," by adding the following wholly new section:

§ 9.1. Rights of victims of crime.

(a) To secure for victims justice and due process throughout the criminal and juvenile justice systems, a victim shall have the following rights, as further provided and as defined by the General Assembly, which shall be protected in a manner no less vigorous than the rights afforded to the accused: to be treated with fairness and respect for the victim's safety, dignity and privacy; to have the safety of the victim and the victim's family considered in fixing the amount of bail and release conditions for the accused; to reasonable and timely notice of and to be present at all public proceedings involving the criminal or delinquent conduct; to be notified of any pretrial disposition of the case; with the exception of grand jury proceedings, to be heard in any proceeding where a right of the victim is implicated, including, but not limited to, release, plea, sentencing, disposition, parole and pardon; to be notified of all parole procedures, to participate in the parole process, to provide information to be considered before the parole of the offender, and to be notified of the parole of the offender; to reasonable protection from the accused or any person acting on behalf of the accused; to refuse an interview, deposition or other discovery request made by the accused or any person acting on behalf of the accused; full and timely restitution from the person or entirely convicted for the unlawful conduct; full and timely restitution as determined by the court in a juvenile delinquency proceeding; to the prompt return of property when no longer needed as evidence; to proceedings free from unreasonable delay and a prompt and final conclusion of the case and any related postconviction proceedings; to confer with the attorney for the government; and to be informed of all rights enumerated in this section.

(b) The victim or the attorney for the government upon request of the victim may assert in any trial or appellate court, or before any other authority, with jurisdiction over the case, and have enforced, the rights enumerated in this section and any other right afforded to the victim by law. This section does

not grant the victim party status or create any cause of action for compensation or damages against the Commonwealth or any political subdivision, nor any officer, employee or agent of the Commonwealth or any political subdivision, or any officer or employee of the court.

(c) As used in this section and as further defined by the General Assembly, the term "victim" includes any person against whom the criminal offense or delinquent act is committed or who is directly harmed by the commission of the offense or act. The term "victim" does not include the accused or a person whom the court finds would not act in the best interests of a deceased, incompetent, minor or incapacitated victim.

Joint Resolution 1 of 2019; Reproduced Record at 304a-05a.

The proposed amendment was submitted to the electorate as a single ballot question on the ballot for the November 5, 2019 election. Below, the Commonwealth Court permanently enjoined the Secretary of the Commonwealth from certifying these votes on the basis that the proposed amendment was not properly submitted to the electorate. Appellants[1] argue to this Court that the Commonwealth Court committed an error of law in concluding that submission of the proposed amendment to the electorate as a single ballot question was violative of the separate vote requirement set forth in Article XI, Section 1 of the Constitution.

In this inquiry we are guided by *Grimaud v. Commonwealth*, 865 A.2d 835 (Pa. 2005), our most recent decision in this area. In *Grimaud*, this Court articulated two separate and distinct tests that must be applied when determining whether it was violative of the separate vote requirement for a proposed amendment to be submitted to the electorate as a single ballot question. The failure of either of these tests renders a proposed amendment void under the separate vote requirement set forth in Article XI, Section 1 of the Constitution.

---

[1] Appellants in this matter are Shameekah Moore, Martin Vickless, Kristin June Irwin, and Kelly Williams.

The first test articulated in *Grimaud* is a "subject matter test." The subject matter test requires us to examine whether the changes in a proposed amendment "are sufficiently interrelated to justify their presentation to the electorate in a single [ballot] question." *Id.* at 841 (quoting *Pa. Prison Soc. v. Commonwealth*, 776 A.2d 971, 984 (Pa. 2001) (Saylor, J., concurring)). This necessitates an examination of whether the changes in a proposed amendment all relate to a singular common objective, such that each change is dependent upon the others to fulfill the singular common objective. *See id.* (citing *Pa. Prison Soc*, 776 A.2d at 984 n.1 (discussing authority from other jurisdictions that apply a subject matter test)).

The second test articulated in *Grimaud* is an effects test. This test requires us to examine a proposed amendment's "substantive affect on the Constitution [by] examining the content, purpose, and effect" of the proposed amendment to determine whether the changes in the proposed amendment would, in actuality, make multiple amendments of the Constitution such that the proposed amendment must be submitted to the electorate as multiple ballot questions. *Id.* at 842. This test is not merely an analysis of "whether the [proposed] amendment[] might touch other parts of the Constitution," or whether the proposed amendment "may possibly impact" other existing provisions of the Constitution. *Id.* (citation omitted). After all, "it is hard to imagine an amendment that would not have some arguable effect on" existing provisions of the Constitution. *Id.* Instead, this test requires an analysis of whether the proposed amendment "facially" or "patently affects" other existing provisions of the Constitution. *Id.*

Turning to the proposed amendment at issue here, I cannot agree with the Majority that the proposed amendment fails both the subject matter test and the effects test. I begin, as the Majority does, with the subject matter test. Again, this test concerns the interrelatedness of the changes in the proposed amendment and necessitates an

examination of whether the changes all relate to a singular common objective, such that each change is dependent upon the others to fulfill the common singular objective. Upon review of the proposed amendment, the singular common objective is readily apparent – "Rights of victims of crime." The first provision of the proposed amendment sets forth in clear and express terms that the objective of the amendment is "[t]o secure for victims justice and due process throughout the criminal and juvenile justice systems." Joint Resolution 1 of 2019. A review of the changes in the proposed amendment reflects that each change is specifically and narrowly tailored to fulfill the foregoing singular common objective of establishing a constitutional amendment tailored to set forth rights for victims of crime. As such, I believe the changes in the proposed amendment "are sufficiently interrelated to justify their presentation to the electorate in a single [ballot] question." *Grimaud*, 865 A.2d at 841 (quoting *Pa. Prison Soc. v. Commonwealth*, 776 A.2d 971, 984 (Pa. 2001) (Saylor, J., concurring)).

In its application of the subject matter test, the Majority looks at the different facets of victims' rights individually rather than, as the subject matter test requires, examining the commonality of the different facets; thus, the Majority entirely skips the required examination of whether the changes in the proposed amendment all relate to a singular common objective. *See* Majority Op. at 53-54. The Majority concludes the proposed amendment manifests multiple separate new rights which "are not dependent on each other to be effective." *Id.* at 53. This is not the correct test. The subject matter test is not an examination of whether each change is dependent upon the others for each individual change to be effective. Such a test would give no weight to the context in which the changes appear. Rather, the test is whether each change is dependent upon the others to effectuate the common singular objective. As the Supreme Court of Arizona articulated in *McLaughlin v. Bennett*, 238 P.3d 619, 622 (Ariz. 2010), "[i]n a separate amendment

challenge, we examine whether provisions of a proposed amendment are sufficiently related to a common purpose or principle that the proposal can be said to constitute a consistent and workable whole on the general topic embraced." (internal quotation marks and citation omitted). In sum, contrary to our clear pronouncement in *Grimaud*, the Majority fails to undertake any analysis of whether the changes in the proposed amendment "are sufficiently interrelated to justify their presentation to the electorate in a single [ballot] question." *Grimaud*, 865 A.2d at 841 (quoting *Pa. Prison Soc. v. Commonwealth*, 776 A.2d 971, 984 (Pa. 2001) (Saylor, J., concurring)).

With regards to the effects test, that test, again requires an examination of whether a proposed amendment would substantially change multiple existing provisions of the Constitution such that the single proposed amendment, in actuality, makes multiple amendments to the Constitution. Initially, I observe that the proposed amendment at issue here does not facially alter the text of any other existing provision of the Constitution. Continuing to the question of whether the proposed amendment patently affects other existing provisions of the Constitution, unlike the Majority, I do not agree with the position taken by the Appellees[2] that it does.

Appellees submit to this Court that the proposed amendment patently affects the following existing provisions of the Constitution: (1) Article V, Section 10(c),[3] which grants this Court "the power to prescribe general rules governing practice, procedure and the conduct of all courts;" (2) Article I, Section 9,[4] which grants a criminal defendant the right "to have compulsory process for obtaining witnesses in his favor;" (3) Article I, Section

---

[2] Appellees in this matter are the League of Women Voters, Lorraine Haw, and Ronald Greenblat.

[3] PA. CONST. art. V, § 10(c).

[4] PA. CONST. art. I, § 9.

14,[5] which provides that "[a]ll prisoners shall be bailable by sufficient sureties;" and (4) Article IV, Section 9,[6] which provides the Governor with the power to issue pardons "on the recommendation . . . of the Board of Pardons." However, any impact the proposed amendment would have on the foregoing provisions is not substantive as each of the powers and rights set forth in the foregoing provisions of the Constitution would remain the same if the proposed amendment took effect. The proposed amendment does not substantively change, alter, expand, contract, or qualify this Court's exclusive rulemaking power, the right of a criminal defendant to seek compulsory process from a court to obtain a witness, the right of a prisoner to be bailable, or the power of the Governor to issue pardons on the recommendation of the Board of Pardons.[7]

That is not to say the proposed amendment would not have some arguable impact on the foregoing provisions of the Constitution. After all, "it is hard to imagine an amendment that would not have some arguable effect on" an existing provision of the

---

[5] PA. CONST. art. I, § 14.

[6] PA. CONST. art. IV, § 9.

[7] The Majority suggests that I am of the opinion that "in order for a proposed amendment to have a substantive effect on existing provisions of the Constitution, it must facially change the actual text of those provisions, or specifically refer to them." Majority Op. at 47 n.29. Respectfully, that is not an accurate reflection of my views.

My view is that under *Grimaud*, a proposed amendment substantively changes an existing provision of the Constitution if the proposed amendment, in effect, would alter the substance of the existing provision. Upon review of the proposed amendment, I do not believe it alters the substance of any other existing constitutional provision. Take, for example, the Governor's power to issue pardons. The proposed amendment would qualify the pardon procedure by constitutionally mandating that victims of crime be notified of, and be allowed to participate in, pardon proceedings. The impact the proposed amendment would have on the existing pardon procedure, in my opinion, is not substantive as it does not change the heart of Article IV, Section 9 of the Constitution, which grants the Governor the power to issue pardons on the recommendation of the Board of Pardons. Therefore, I conclude the proposed amendment does not facially or patently affect the substance of Article IV, Section 9 of the Construction.

Constitution. *Grimaud*, 865 A.2d at 842. However, as we made clear in *Grimaud*, the effects test is not an examination of "whether the [proposed] amendment[] might touch other parts of the Constitution," or whether the proposed amendment "may possibly impact," other existing provisions of the Constitution, but rather the focus is whether the proposed amendment substantively changes existing provisions of the Constitution. *Id* (citation omitted).

I conclude by repeating that Article XI, Section 1 of the Constitution provides that "[w]hen two or more amendments shall be submitted they shall be voted upon separately." PA. CONST. art. XI, § 1. The changes in the proposed amendment are specifically and narrowly tailored to fulfill the singular common objective of establishing for victims of crime justice and due process in the criminal and juvenile justice systems, and do not substantively change any other existing provisions of the Constitution. As such, I would hold the submission of the proposed amendment to the electorate as a single ballot question was not violative of the separate vote requirement of Article XI, Section 1. Thus, I would reverse the order of the Commonwealth Court.