IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| League of Women Voters of Pennsylvania and Lorraine Haw, Petitioners | : : : : | |
| v. | : : | No. 578 M.D. 2019 ARGUED: June 10, 2020 |
| Kathy Boockvar, the Acting Secretary of the Commonwealth, Respondent | : : : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE ELLEN CEISLER, Judge

**PER CURIAM**

## ORDER ANNOUNCING THE JUDGMENT OF THE COURT

AND NOW, this 7th day of January, 2021, the application for summary relief filed by Petitioners, League of Women Voters of Pennsylvania and Lorraine Haw, is GRANTED IN PART and DENIED IN PART as follows:

1.     The Court hereby declares that the proposed amendment to Article I of the Pennsylvania Constitution, as set forth in Joint Resolution No. 2019-1 (Proposed Amendment), violates Article XI, Section 1 of the Pennsylvania Constitution and, therefore, is unconstitutional.

2.     The Court further declares that all votes cast on the Proposed Amendment in the November 2019 general election are invalid.

---

[1] The decision in this case was reached before January 4, 2021, when Judge Leavitt served as President Judge.

3. The Secretary of the Commonwealth is ordered not to tabulate or certify any votes cast on the Proposed Amendment in the November 2019 general election.

4. All other requests for declaratory relief are denied as moot.

Judge Ceisler files an opinion in support of the order announcing the judgment of the Court in which Judge Wojcik joins.

Judge McCullough files an opinion in support of the order announcing the judgment of the Court.

President Judge Leavitt files an opinion in opposition to the order announcing the judgment of the Court in which Judge Fizzano Cannon joins.

Judges Cohn Jubelirer, Brobson, Covey, and Crompton did not participate in the decision of this matter.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

League of Women Voters of     :
Pennsylvania and Lorraine Haw,   :
                 Petitioners   :
                               :
       v.                   :  No. 578 M.D. 2019
                               :  ARGUED:  June 10, 2020
Kathy Boockvar, the Acting Secretary :
of the Commonwealth,        :
                 Respondent   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION IN SUPPORT OF ORDER ANNOUNCING THE
JUDGMENT OF THE COURT

BY JUDGE CEISLER                     FILED:  January 7, 2021

This Petition for Review (Petition) comes before us in our original jurisdiction.  Petitioners are the League of Women Voters of Pennsylvania[2] and Lorraine Haw,[3] a registered Pennsylvania voter (collectively, Voters).  Respondent

---

[1] The decision in this case was reached before January 4, 2021, when Judge Leavitt served as President Judge.

[2] The League of Women Voters (League) is a nationwide, nonpartisan grassroots organization that believes that through informed action, people can make profound changes in their communities.  Pet. for Review, ¶ 5.  The goal of the League is to help create an informed, empowered citizenry and a responsible, responsive government.  *Id.* ¶ 8.  One way the League works to fulfill its mission is through education and awareness of election and voting issues.

[3] Ms. Haw alleges her brother was murdered and her son is serving a life sentence without parole.  *Id.* ¶ 11.  She believes both her son and her brother's murderer should be freed.  *Id.* ¶ 12. Ms. Haw also has a criminal record, for which she is seeking a pardon.  *Id.* ¶¶ 14, 15.  She is **(Footnote continued on next page…)**

is Kathy Boockvar, Acting Secretary of the Commonwealth (Secretary).[4]  Voters have requested declaratory relief, as well as an injunction to prevent presentation of a ballot question to the electorate during the November 2019 General Election (Ballot Question).   The Ballot Question asked the electorate to decide whether a new amendment, Section 9.1 (Proposed Amendment), should be added to Article I of the Pennsylvania Constitution, PA. CONST. art. I.  The Proposed Amendment, also known as the Victims' Rights Amendment, would create a number of new constitutional rights for victims and others directly impacted by crimes.

The parties have filed cross-applications for summary relief.  After thorough review, the Court grants in part and denies in part Voters' application for summary relief in the form of declaratory and injunctive relief.  The Court denies the Secretary's application for summary relief.

## I. Background

On June 19, 2019, the Senate passed the Proposed Amendment as House Bill 276, also known as Joint Resolution 2019-1.   The impetus of the Proposed Amendment is protection for the rights of victims and others directly impacted by crimes.  *See* Appendix at iii-v for the full text of the Proposed Amendment.

Pursuant to the requirements of Section 201.1 of the Pennsylvania Election Code (Election Code),[5] 25 P.S. § 2621.1, the Attorney General prepared a Plain

---

concerned about what will happen to her request for a pardon if a purported victim of her crimes comes forward to object to her pardon request. *Id.*  The Petition for Review (Petition) alleges that Ms. Haw agrees with some parts of the proposed constitutional amendment but disagrees with others, and she cannot separately vote on each right the proposed amendment would establish. *Id.* ¶ 16.

[4] This Court also granted intervention to Shameekah Moore, Martin Vickless, Kristin June Irwin, and Kelly Williams (collectively, Moore Intervenors), who are aligned with the Secretary, and Ronald L. Greenblatt, Esquire, who is aligned with Voters.

[5]Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.  Section 201.1 of the Election Code was added by the Act of February 19, 1986, P.L. 29, 25 P.S. § 2621.1.

2

English Statement[6] of the Proposed Amendment's contents. *See* Appendix at i-iii for the full text of the Plain English Statement.

Pursuant to the requirements of Section 1110(b) of the Election Code, 25 P.S. § 3010(b), the Secretary prepared the Ballot Question for approval by the General Assembly. Although the Proposed Amendment contains 749 words excluding its title, any ballot question presented for voting is statutorily restricted to not more than 75 words. *Id.* Here, the Ballot Question was 73 words long. *See* Appendix at i for the text of the Ballot Question.

The parties agree that the Proposed Amendment, the Plain English Statement, and the Ballot Question were all properly published and accessible to the electorate in advance of the November 2019 election, as required by Section 201.1 of the Election Code.

On October 10, 2019, Voters filed their Petition in this Court's original jurisdiction, challenging the constitutionality of the Proposed Amendment and the Ballot Question.[7] Voters also filed an application for a preliminary injunction, seeking to enjoin presentation of the Ballot Question pending final disposition of the Petition on the merits. A preliminary injunction hearing was held on October 23, 2019 (PI hearing).[8] Following the PI hearing, this Court found Voters sustained their

---

[6] Section 201.1 of the Election Code requires the Attorney General to prepare a Plain English Statement "which indicates the purpose, limitations and effects of the ballot question on the people of the Commonwealth." 25 P.S. § 2621.1. The Secretary was required to include the Plain English Statement in publication of the Proposed Amendment. *Id.*

[7] The Secretary and Moore Intervenors raised laches as a defense to Voters' request for an injunction. Our Supreme Court has declared, however, that "laches cannot be invoked to prevent the determination of the propriety of the submission of [a constitutional] amendment." *Tausig v. Lawrence*, 197 A. 235, 239 (Pa. 1938).

[8] Immediately prior to the hearing, counsel for the parties and Intervenors stipulated to the following: 1) Ms. Haw and Moore Intervenors are registered voters in the Commonwealth; 2) the **(Footnote continued on next page…)**

3

burden of proving they met the criteria for obtaining a preliminary injunction. Therefore, this Court issued an order preliminarily enjoining tabulation and certification of the votes on the Proposed Amendment pending a disposition of the Petition on the merits.[9] Our Supreme Court affirmed.[10] *League of Women Voters v. Boockvar*, 219 A.3d 594 (Pa. 2019).

On December 13, 2019, the parties filed cross-applications for summary relief pursuant to Pa. R.A.P. 1532(b). The cross-applications for summary relief are now before this Court for disposition.

## II. Issues

In the three counts of the Petition, Voters present three main issues for disposition by this Court, which we summarize as follows.

In Count I of the Petition, Voters aver that the Proposed Amendment would effect multiple significant and separate changes to the Pennsylvania Constitution by mandating a wide range of new, separate, and independent rights to victims and others directly impacted by a crime. Voters assert that the Proposed Amendment would impermissibly extend new powers to the General Assembly, infringe the authority of the Pennsylvania Supreme Court and the Governor, and amend multiple existing constitutional articles and sections pertaining to multiple subjects. For these

---

General Assembly and Office of Attorney General properly adhered to the process by which the General Assembly and the Secretary can place the Proposed Amendment on the November 2019 ballot as the Ballot Question; and 3) the costs incurred by the Department of State for publication of the Proposed Amendment, the Plain English Statement, and the Ballot Question throughout the Commonwealth.

[9] During the PI hearing, Voters withdrew their initial request for an order enjoining submission of the Ballot Question to the electorate in the November 2019 General Election. The Proposed Amendment remained on the ballot, and the votes remain to be tabulated and certified if Voters do not prevail on the merits. Thus, the Petition is not moot.

[10] Chief Justice Saylor filed a dissenting opinion, in which Justices Dougherty and Mundy joined.

reasons, Voters argue that the Proposed Amendment violates Article XI, Section 1 of the Pennsylvania Constitution[11] by impermissibly encompassing multiple subjects and thus preventing the electorate from voting "yes" to the Proposed Amendment provisions they approve and "no" to the Proposed Amendment provisions they oppose.

In Count II of the Petition, Voters assert that the Ballot Question further violates Article XI, Section 1,[12] because the Ballot Question does not contain the actual text of the Proposed Amendment. Voters interpret Article XI, Section 1 to require publication *on the ballot* of the entire text of the Proposed Amendment.

In Count III of the Petition, Voters allege that the Proposed Amendment, the Ballot Question, and the Plain English Statement do not fairly, accurately, and clearly apprise the electorate of the issues because they fail to inform the electorate of many changes that the Proposed Amendment would effect on existing constitutional rights of the accused. *See Sprague v. Cortes*, 145 A.3d 1136, 1141 (Pa. 2016); *Stander v. Kelley*, 250 A.2d 474, 480 (Pa. 1969).

### III. Discussion

### A. Introduction

Article I of the Pennsylvania Constitution is the Commonwealth's Declaration of Rights, which delineates the terms of the social contract between government and the people that are of such "general, great and essential" quality as to be ensconced

---

[11] In pertinent part: "When two or more amendments shall be submitted they shall be voted upon separately." PA. CONST. art. XI, § 1.

[12] In pertinent part: "[S]uch proposed amendment or amendments shall be submitted to the qualified electors of the State in such a manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe . . . ." PA. CONST. art. XI, § 1.

5

as "inviolate." PA. CONST. art. I, preamble & § 25; *see also* PA. CONST. art. I, § 2; *Robinson Twp., Wash. Cnty. v. Commonwealth*, 83 A.3d 901, 947 (Pa. 2013).

> In considering the text of the provisions, we first look to their placement in the larger charter. The structure of the Pennsylvania Constitution highlights the primacy of Pennsylvania's protection of individual rights: "The very first Article of the Pennsylvania Constitution consists of the Pennsylvania Declaration of Rights, and the first section of that Article affirms, among other things, that all citizens 'have certain inherent and indefeasible rights.'"

*Commonwealth v. Molina*, 104 A.3d 430, 442 (Pa. 2014) (quoting *Pap's A.M. v. City of Erie*, 812 A.2d 591, 603 (Pa. 2002)).

Moreover, our charter further protects the rights detailed in Article I, Section 25: "To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate." *Id.* (quoting PA. CONST. art. I, § 25). "Unlike the Bill of Rights of the United States Constitution which emerged as a later addendum in 1791, the Declaration of Rights in the Pennsylvania Constitution was an organic part of the state's original constitution of 1776, and appeared (not coincidentally) first in that document." *Id.* (quoting *Commonwealth v. Edmunds*, 586 A.2d 887, 896 (Pa. 1991)).

> Under our system, one accused of a crime is presumed innocent until the prosecuting attorney has demonstrated beyond a reasonable doubt to an impartial jury of the vicinage that he and the malefactor are identical, or that his actions match the definition or conform to the elements of the malefaction of which he stands accused.

*Commonwealth v. Raffensberger*, 435 A.2d 864, 865 (Pa. Super. 1981). "This presumption of innocence is but one of the many aspects of the fundamental law of our land. Like its counterparts, it emanates from the core concept which seeks to restrain governmental excess and prevent abuse by those exercising state power."

6

*Id.* (emphasis added). "As it pursues justice the Commonwealth is thus committed not only to the principle that one is innocent until proven guilty, but also to the principle of fairness in criminal prosecutions. Indeed, these principles are complementary[;] one without the other would frustrate the ends and objectives of justice." *Id.*

"The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error." *In re Winship*, 397 U.S. 358, 363 (1970). The presumption of innocence is a bedrock, axiomatic and elementary principle, the enforcement of which lies at the foundation of the administration of our criminal law. *Id.*; *Coffin v. United States*, 156 U.S. 432, 453 (1895).

"Our state Constitution, by various sections of [A]rticle I, provides that all men 'have certain inherent and indefeasible rights,' among others to address by petition those invested with the powers of government, and that this 'shall forever remain inviolate.'" *Spayd v. Ringing Rock Lodge No. 665, Bhd. of R.R. Trainmen of Pottstown*, 113 A. 70, 72 (Pa. 1921).

Moreover, "[t]he right in question is a fundamental one, expressly recognized in the organic law of our state as belonging to 'citizens.'" *Id.*

> In other words, it is possessed by members of the state, or 'citizens' to work out the public weal, rather than by individuals, to protect their persons or property or to serve private ends. The Constitution does not confer the right, but guarantees its free exercise, without let or hindrance from those in authority, at all times, under any and all circumstances; and, when this is kept in view, it is apparent that such a prerogative can neither be denied by others nor surrendered by the citizen himself.

*Id.* (citation omitted).

7

Applying these basic precepts of our Constitution, and our democracy to the matter at hand, it is clear that the Proposed Amendment, by its plain language, will immediately, profoundly, and irreparably impact individuals who are accused of crimes, the criminal justice system as a whole, and most likely victims as well.

## B. Single Subject Requirement

Article XI, Section 1 of the Pennsylvania Constitution provides, in pertinent part: "When two or more amendments shall be submitted they shall be voted upon separately." PA. CONST. art. XI, § 1. In discussing the importance of this constitutional provision, this Court has explained:

> The process of amending the Constitution described in Article XI, Section 1 has been described by the Supreme Court of Pennsylvania as "a concentration of all the power of the people in establishing organic law for the commonwealth . . . . It is not lawmaking, which is a distinct and separate function, but it is a specific exercise of the power of a people to make its constitution." *Commonwealth [] v. Griest*, . . . , 46 A. 505, 506 ([Pa.] 1900).

> The Constitution is the fundamental law of our Commonwealth, and in matters relating to alterations or changes in its provisions, the courts must exercise the most rigid care to preserve to the people the right assured to them by that instrument. No method of amendment can be tolerated which does not provide the electorate adequate opportunity to be fully advised of proposed changes.

> *Commonwealth ex rel. Attorney General v. Beamish*, . . . 164 A. 615, 616-17 ([Pa.] 1932). Not only must the electorate be fully advised of the proposed changes to the Constitution, but also all of the Constitution's technical requirements for amendment must be observed. Amendments to the Constitution should not be taken lightly or made easily. The process described in Article XI, Section 1 is reserved for simple, straightforward changes to the Constitution, easily described in a ballot question and easily understood by the voters. This process should not be used to circumvent a constitutional convention,

8

the process for making complex changes to the Constitution . . . . When multiple changes with important ramifications for our system of criminal justice are proposed, . . . the electorate cannot be adequately informed of the changes and their effects by a single ballot question and a brief, plain English statement.

We agree with the Supreme Court of Oregon that the requirement that amendments be voted on separately "serves as a safeguard that is fundamental to the concept of a constitution." *Armatta v. Kitzhaber*, . . . 959 P.2d 49, 63 ([Or.] 1998). As our Supreme Court stated in *Griest*, amending the Constitution is not lawmaking, *i.e.*, the making of legislation. It is the changing of our organic law, *i.e.*, "constitutionmaking." The voters must be able to express their will as to each substantive constitutional change separately, especially if these changes are not so interrelated that they must be made together. If multiple changes are so interrelated that they must be made together, as a unit, then they are too complex to be made by the process described in Article XI, Section 1. Those changes should be made by constitutional convention, where they can be more adequately debated and understood.

*Pa. Prison Soc'y v. Commonwealth*, 727 A.2d 632, 634-35 (Pa. Cmwlth. 1999) (*Prison Society I*), *rev'd on other grounds*, 776 A.2d 971 (Pa. 2001).

Our Supreme Court has considered the separate vote requirement in a number of cases, three of which provide guidance in this matter. The Court has held that ballot questions far less wide-ranging than the Proposed Amendment violated Article XI, Section 1.

In *Bergdoll v. Kane*, 731 A.2d 1261 (Pa. 1999), the General Assembly, by joint resolution, had drafted a proposed amendment that would have deleted the face-to-face requirement of the Confrontation Clause of the Pennsylvania Constitution, PA. CONST. art. I, § 9, and would have given the General Assembly the authority to establish by statute the manner in which child testimony could be taken. The ballot question asked:

9

Shall the Pennsylvania Constitution be amended to provide (1) that a person accused of a crime has the right to be "confronted with the witnesses against him," instead of the right to "meet the witnesses face to face," and (2) that the General Assembly may enact laws regarding the manner by which children may testify in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television?

*Id.* at 1265-66. This Court found the ballot question violated Article XI, Section 1 since the question amended *both* Article I, Section 9's Confrontation Clause and Article V, which grants the Supreme Court the power to prescribe the general rules governing practice, procedure and the conduct of the courts. Thus, the electorate had the right to vote on these two amendments separately.

Our Supreme Court affirmed, agreeing the proposed amendment violated Article XI, Section 1 because it contained two proposals, amendments to Article I, Section 9 and Article V, but did not permit the electorate to vote separately on each amendment. Notably, now-Chief Justice Saylor issued a concurrence opining that the proposed amendment encompassed two separate, non-interdependent changes to the Constitution. He opined that the changes to the Confrontation Clause "lacked the interdependence necessary to justify their presentation to voters within the framework of a single question." *Id*. at 1271 (Saylor, J., concurring).

*Prison Society I* involved a challenge to a proposed constitutional amendment to Article IV, Section 9, relating to the Governor's power to remit fines and forfeitures and to grant reprieves to commutation of sentences and pardons. At the time, Article IV also mandated that no pardon or commutation be granted except upon the written recommendation of either two-thirds or a majority of the Board of Pardons after a full public hearing. Article IV also addressed, in subsection (b), members of the Board and how their appointments and confirmations were effected. The proposed amendment would have required the Board's pardon recommendation

10

to be unanimous, would have changed who could be appointed to the Board, and would have changed the requirement that Board members be confirmed by two-thirds or a majority of the Senate to the requirement that a majority of the Senate confirm the nominees. The ballot question reflected these proposed changes.

This Court denied the Pennsylvania Prison Society's claim for injunctive relief, but ultimately determined that the proposed amendment violated Article XI, Section 1, because it constituted five amendments to the Constitution, and each amendment required a separate vote. In deciding the issue, this Court observed that it must "favor a natural reading [of constitutional provisions] which avoids contradictions and difficulties in implementation, which completely conforms to the intent of the framers and which reflects the views of the ratifying voter." *Id.* at 634.

On appeal, our Supreme Court observed that the *Bergdoll* Court considered the content, purpose, and effect of the proposed amendment even though the ballot question itself did not specifically refer to each constitutional provision that would have been effectively amended by its adoption. Our Supreme Court observed that the proposed amendment in *Bergdoll* would have amended only one section of one article of the Constitution. The ballot question and the text of the proposed amendment in *Prison Society I*, however, encompassed two separate amendments (as opposed to the five amendments this Court had discerned) to Article IV, Section 9, and did not permit the electorate to vote separately upon each proposed amendment. In *Pennsylvania Prison Society v. Commonwealth*, 776 A.2d 971 (Pa. 2001) (*Prison Society II*), our Supreme Court determined that the proposed amendment restructured the pardoning power of the Board and altered the confirmation process for Board members. The Court further determined that the proposed amendment relating to the Board's composition and unanimous vote

11

requirement constituted a single question. The change in the process for confirmation of gubernatorial nominees, however, presented a separate amendment that required a separate vote.[13]

In his concurring opinion, Chief Justice Saylor opined that a single-subject matter focus should be used to determine whether alterations of the Constitution are *sufficiently interrelated* to justify their presentation to the electorate in a single question. *Id.* at 984 (Saylor, J., concurring, joined by Castille and Newman, JJ.).

In *Grimaud v. Commonwealth*, 865 A.2d 835 (Pa. 2005), a majority of the electorate approved amendments to Article I, Section 6 of the Constitution (relating

---

[13] Even though the question violated Article XI, Section 1's separate vote requirement, the Court declined to invalidate the question because the proposed amendment did not actually change the Senate's confirmation process. Rather, both Article IV, Section 9 and the proposed amendment provided that a majority of the Senate must confirm the Governor's Board nominees. The proposed amendment only deleted the "two-thirds" language but retained the "majority" language for confirmation. *Pa. Prison Soc'y v. Commonwealth*, 776 A.2d 971, 982 (Pa. 2001) (*Prison Society II*). The Court determined that because the proposed amendment did not change the confirmation process, there was really only one issue to be presented to the electorate. Separate votes were therefore not required. The Court noted, however, that Article XI, Section 1 "will require that a ballot question be declared null and void, except in the [unusual] circumstances presented [t]here." *Id.* at 982.

to trial by jury)[14] and Article I, Section 14 (relating to bail and *habeas corpus*).[15] The *Grimaud* petitioners filed an action in this Court, seeking a declaration that, among other things, the amendments were invalid because each ballot question proposed multiple amendments in violation of Article XI, Section 1. In part, this Court held that the jury trial and bail questions constituted a single amendment

---

[14] Prior to amendment, Article I, Section 6 provided:

Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in a civil case.

Article I, Section 6, as approved by a majority of the electorate, now provides:

Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General Assembly may provide, however, by law that a verdict may be rendered by not less than five-sixths of the jury in a civil case. *Furthermore, in criminal cases the Commonwealth shall have the same right to trial by jury as does the accused.*

PA. CONST. art. I, § 6 (emphasis added); *see Grimaud v. Commonwealth*, 865 A.2d 835, 839-40 (Pa. 2005).

[15] Prior to amendment, Article I, Section 14 provided:

All prisoners shall be bailable by sufficient sureties, unless for capital offense when the proof is evident or presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in the case of rebellion or invasion the public safety may require it.

Article I, Section 14, as approved by a majority of the electorate, now provides:

All prisoners shall be bailable by sufficient sureties, unless for capital offense **or** *for offenses which the maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community* when the proof is evident or presumption great; and the privilege of the writ of habeas corpus shall not be suspended, unless when in the case of rebellion or invasion the public safety may require it.

PA. CONST. art. I, § 14 (emphasis added); *see Grimaud*, 865 A.2d at 839.

13

because they served one core purpose and effectuated one substantive change. *Id.* at 840.

On appeal, our Supreme Court addressed the applicable standard used to determine whether the changes were properly presented as a single question. Noting that its decision in *Prison Society II* resulted in no clear majority on the standard to apply, the Court was persuaded by then-Justice Saylor's concurring opinion in that case suggesting the test should have a "***subject-matter focus to determine whether [the] alterations are sufficiently interrelated to justify their presentation to the electorate in a single question.***" *Grimaud,* 865 A.2d at 841 (quoting *Prison Society II*, 776 A.2d at 984 (Saylor, J., concurring, joined by Castille and Newman, JJ.)) (emphasis added).

The Supreme Court also found persuasive several authorities from other jurisdictions that have utilized a single-subject test and examined the interdependence of the proposed constitutional changes in determining the necessity of separate votes. The Supreme Court expressly adopted the "subject-matter test" for determining whether a ballot question violates Article XI, Section 1 of the Pennsylvania Constitution. In *Grimaud*, the Court determined that the ballot questions related to a single subject to justify inclusion in a single question, bail.

The petitioners in *Grimaud* advanced similar arguments to those made here. In *Grimaud*, the petitioners asserted that the single ballot question amended four other provisions found in Article I of the Constitution. The Court analyzed the ballot ***question's substantive effect on the Constitution, examining its content, purpose, and effect.*** *Id.* at 842. The Supreme Court in *Grimaud* agreed with this Court's conclusion that "merely because an amendment 'may possibly impact other provisions' does not mean it violates the separate vote requirement." *Id.* **Rather,**

14

*the "test to be applied is not merely whether the amendments might touch other parts of the Constitution when applied, but rather, whether the amendments facially affect other parts of the Constitution." Id*. (emphasis added).

However, *Bergdoll*, *Prison Society II*, and *Grimaud* are not directly applicable to this case because they involved amendments to *existing* constitutional provisions, not adoption of an entirely new section that may conflict with other provisions of the Constitution. *See Sprague*, 145 A.3d at 1145 (Todd, J., dissenting) ("*[T]here is a categorical difference between the act of creating something entirely new and altering something which already exists.* Language which suggests the former while, in actuality, doing the latter is, at the very least, misleading, and, at its worst, constitutes a ruse.") (emphasis added). Nonetheless, *Bergdoll*, *Prison Society II*, and *Grimaud* still provide some guidance here. These decisions instruct that in deciding whether a proposed amendment is constitutional, courts must determine whether it encompasses a single subject that is *sufficiently interrelated*. Courts also must consider the proposed amendment's substantive effect on the Constitution by examining its content, purpose and effect. "It is the responsibility of [the courts] to insure that the provisions of the Constitution establishing the procedure for the proposal and adoption of constitutional amendments are satisfied." *Prison Society II*, 776 A.2d at 977. "The Constitution is the fundamental law of our Commonwealth, and in matters relating to alterations or changes in its provisions, the courts must exercise the most rigid care to preserve to the people the right assured to them by that instrument." *Id.* (quoting *Beamish*, 164 A. at 616-17).

Of critical importance, *the process outlined in Article XI, Section 1 "was not designed to effectuate sweeping, complex changes to the Constitution," Prison*

15

*Society II*, 776 A.2d at 976 (emphasis added); *see also Prison Society I*, 727 A.2d at 634-35.

> [V]oters should be given free opportunity to modify the fundamental law as may seem to them fit, but this must be done in the way they themselves have provided, if stability, in the carrying on of government, is to be preserved. It is the duty of the courts to follow the rules fixed by the Constitution. If believed to be unwise, in the provisions expressed, it should be rewritten, or modified, but as long as plain words are used, directing what shall be permitted, it is imperative on the courts to restrain any actions that are forbidden.

*Prison Society II*, 776 A.2d at 976 (quoting *Taylor v. King*, 130 A. 407, 409-10 (Pa. 1925), *overruled in part on other grounds by Stander*).

Applying the Supreme Court's decisions here, it is the judgment of the Court that the Proposed Amendment would implement sweeping and complex changes to the Constitution. Indeed, an exhaustive search of Pennsylvania case law reveals no other amendment to a section of the Constitution that was as sweeping in scope as the Proposed Amendment. The Proposed Amendment impermissibly extends new powers to the General Assembly in violation of the Constitution and facially and substantially amends multiple existing constitutional articles and sections *pertaining to multiple subject matters that are not sufficiently interrelated* to be voted upon as a single constitutional amendment.

16

## 1. Proposed Amendment's Facial and Substantial Effects on Constitutional Rights of the Accused[16]

Article I, Section 9 of the Pennsylvania Constitution[17] provides an accused with the right to be confronted with witnesses against him and the right to compulsory process for obtaining witnesses and other evidence in his favor. A defendant's ability to obtain discoverable material is part of the compulsory process guaranteed under Article I, Section 9. PI Hearing Testimony (H.T.) at 30. However, the Proposed Amendment would facially allow a victim or any other person *directly impacted by a crime*[18] to refuse an interview, deposition, or other discovery request

---

[16] Judge Leavitt's opinion dissenting from the order announcing the Court's judgment posits that the judgment improperly relies on subjective and speculative concerns and fails to focus on the criteria for obtaining injunctive relief, specifically whether greater harm will result from denying than from granting such relief. However, sufficient evidence was offered at the PI hearing to render non-speculative the concerns and conclusions regarding the wide-ranging effects that would flow from the Proposed Amendment, as well as the insufficient interrelation of those effects to constitute a single subject for constitutional amendment purposes.

[17] Article I, Section 9, titled Rights of Accused in Criminal Prosecutions, provides:

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, *to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor*, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

PA. CONST. art. I, § 9 (emphasis added).

[18] The Proposed Amendment fails to explain what other persons, in addition to the victim, may be "directly impacted by a crime." The term could include the victim's family, friends, and even strangers who witness a crime and are impacted by what they have seen. Without appropriate limiting language, the number of persons asserting a direct impact, and an accompanying right to refuse all discovery requests, could foreseeably expand to encompass virtually everyone with any information relevant to the defense. The potential damage to an accused's ability to defend himself **(Footnote continued on next page…)**

17

made on behalf of a criminal defendant. Pet. for Review, Ex. A; Pet'rs' Ex. P-1; H.T. at 24-25.

In addition to witness testimony, evidence sought in discovery may include text messages, e-mails, Facebook posts and evidence from other social media platforms, medical and financial records, cell phone data, and security videos. Such evidence can be critical to building a defense. H.T. at 27-29, 32, 56-57, 65. If not obtained as soon as possible, such evidence can easily be lost forever. H.T. at 27. However, under the Proposed Amendment, victims of crimes, and anyone else who has been directly impacted by the crimes, will have the right to refuse to produce requested evidence, citing their absolute constitutional right to privacy, that is, "to be treated with fairness and respect for the victim's safety, dignity *and privacy.*" Pet. for Review, Ex. A; Pet'rs' Ex. P-1 (some emphasis deleted).

Presumably, defense attorneys will seek court orders to compel the production of such evidence; but if a victim of a crime, or anyone else impacted by that crime, asserts a constitutional right to privacy, even relevant evidence might be unobtainable, because a court cannot issue an order, including a subpoena, that violates the Constitution. *See* H.T. at 59, 66, 70, 81. Because the prosecution has no obligation to investigate or engage in discovery seeking exculpatory evidence,[19] a provision causing the defendant's inability to obtain discovery necessary to his

---

against a criminal charge could be profound. Furthermore, constitutionally mandating that all persons "directly impacted" by a crime **shall** have the right to participate in each step of the criminal justice process, would likely grind the proceedings to a halt, at great detriment to both the accused and the victims.

[19] Defense counsel cannot simply rely upon the good faith efforts of the Commonwealth to conduct comprehensive investigations on behalf of the accused. Prosecutors have no obligation to do such investigations. The Commonwealth is only mandated to provide the defense with evidence that the Commonwealth has obtained. *See Commonwealth v. Maldonodo*, 173 A.3d 769, 783 (Pa. Super. 2017) (Commonwealth not required to aid defense counsel's investigation or sift through evidence on defendant's behalf).

defense would facially and substantially deny his constitutional rights under Article I, Section 9.

Additionally, defense attorneys will be forced to file pretrial motions and appeals setting forth the nature of the case, the relevance of the requested discovery, and the reason why the discovery request was denied in order to protect the accused, and the record, for future appeals. H.T. at 45-46, 51. This will clog the courts' dockets, delaying dispositions and trials to the detriment of those accused of crimes *and victims* alike. The increase in pretrial discovery motions, the resulting delays in obtaining discovery (if such discovery is eventually granted at all), and the uncertainty of determining who is impacted by a crime and how to notify each such person, will all impede the defendant's right to a speedy trial, another constitutional protection. *See* PA. CONST. art. I, § 9 (providing a criminal defendant "in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage"); H.T. at 44-45. Such delays would not only harm the accused; they would also deny victims their rights to justice if prosecutions had to be dismissed or withdrawn because the Commonwealth was unable to bring trials within the time frame of Pennsylvania Rule of Criminal Procedure 600, Pa.R.Crim.P. 600. H.T. at 40-41.

Even negotiated plea agreements would be affected. Without compulsory discovery as mandated by Article I, Section 9 of the Constitution, the Proposed Amendment would hamstring defense attorneys' efforts to negotiate reasonable and informed plea agreements, because neither defense counsel nor the accused would have a complete understanding of the case. H.T. at 41-42. A guilty plea is not

knowing, intentional, or voluntary if the accused does not know the full extent of the evidence that would be available at trial.[20]

The trial process itself would also be adversely affected. Trial judges already have the power and duty to protect witnesses from badgering and harassment by counsel. However, defense counsel would be hampered from conducting effective cross-examination if protection for a witness's dignity and privacy precluded necessary inquiry into delicate personal matters that may be completely germane to the case and critical to the defense. H.T. at 36-37.

Passage of the Proposed Amendment would also disrupt matters within the Department of Corrections and local county jails. Release of inmates, whether through parole, probation, or completion of a term of incarceration, could be delayed because the victim and anyone else directly impacted by the crime would have the right to be heard in "any proceeding where the right of the victim is implicated, including, but not limited to, release . . . ." Pet. for Review, Ex. A; Pet'rs' Ex. P-1 (emphasis deleted). Agencies responsible for the release of inmates would need to verify that victims, and anyone else directly impacted by the crime, had been provided notice and, where required, an opportunity to be heard concerning the inmate's release. This is particularly harmful to those inmates who have completed the term of their sentences and are lawfully entitled to be released.

Thus, the Proposed Amendment would facially and substantially affect multiple constitutional rights of criminal defendants. Moreover, those rights are not sufficiently interrelated to be the subject of a single constitutional amendment.

---

[20] Fear of the unknown outcome of trials, and the desire to get out of jail are just two well-known reasons that defendants plead guilty to crimes they may not have committed.

20

## 2. Facial and Substantial Effects on Multiple Constitutional Provisions

In addition to Article I, Section 9, the Proposed Amendment would facially and substantially affect multiple separate constitutional provisions and rights. They include Article I, Section 14 (the general right of the accused to bail), Article IV, Section 9 (the Governor's power to commute sentences and grant pardons, among other things), and Article V (our Supreme Court's power to prescribe general rules governing practice, procedure and the conduct of all courts). Thus, the Proposed Amendment would facially and substantially affect multiple separate constitutional provisions and rights.

Voters also argue that presentation of the Proposed Amendment to the electorate will facially and substantially undermine the electorate's fundamental right to vote, as provided by Article I, Section 5 of the Constitution: "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." PA. CONST. art. I, § 5. The Constitution is the fundamental law of our Commonwealth. *Prison Society II*, 776 A.2d 971. Therefore, there is a fundamental right to vote. *Bergdoll*, 731 A.2d at 1268 (recognizing that challenge to ballot question regarding amendment to Confrontation Clause was in fact a challenge brought to protect the fundamental right to vote). To safeguard this fundamental right, Article XI, Section 1 of the Constitution requires that the electorate must be given the opportunity to vote on *each* proposed victims' right, because each is a separate amendment to the Constitution. Pursuant to Article XI, Section 1, separate votes are required when two or more amendments are submitted to the electorate. PA. CONST. art. XI, § 1.[21]

---

[21] The Secretary suggests that the Department of State advertised the Proposed Amendment, the Plain English Statement, and the Ballot Question as required by statute in August, September, and October 2018, as well as in August, September, and October 2019. In addition, **(Footnote continued on next page…)**

The goal of the courts is to protect the right to vote, not to disenfranchise voters. *In re Luzerne Cnty. Return Bd.*, 290 A.2d 108 (Pa. 1972). The Constitution mandates separate votes on each proposed constitutional amendment, and if a prospective amendment placed on the ballot fails to satisfy this mandate, disenfranchisement occurs. Voters argue that nearly every right provided in the Proposed Amendment facially constitutes a separate amendment to the Constitution. Voters maintain that despite the numerous changes proposed to the Constitution, the electorate has only one option: to vote either "yes" or "no" to the entirety of the Proposed Amendment, which is constitutionally prohibited because the resulting changes to our Constitution are not sufficiently interrelated. *Prison Society II*, 776 A.2d at 981.[22]

### 3. Insufficient Interrelation of Subjects

Contrary to the Secretary's assertions, the competing rights established in the Proposed Amendment are not sufficiently interrelated to permit characterization as a single subject. The Proposed Amendment facially addresses a wide range of subject matters including bail, discovery, due process, restitution, the right to privacy, and evidence control, all under the auspices of connecting them to victims' rights. However, the right to restitution is not related to the right to be notified and participate in all public hearings or the right to curb the accused's right to confront

---

the documents are available on the Department's website. Thus, the electorate was provided many opportunities to inform itself of the Proposed Amendment.

Neither Voters nor the Court suggests that the General Assembly, Office of Attorney General, or the Secretary failed to follow the law in getting the Ballot Question on the ballot. That is not the issue. The issue is whether the Ballot Question violates the single-subject rule of Article XI, Section 1, requiring separate votes by the electorate on each proposed right.

[22] This problem will be compounded if the full text (or even a fair summary) of the Proposed Amendment will not be on the ballot.

22

the witnesses against him. The proposed right to participate in bail hearings is not related to the right to notification of (and participation in) release of the offender or commutation of his sentence.

The Proposed Amendment (1) contains multiple changes to the Constitution because it provides a whole series of new, separate, and independent rights to victims of crimes, and (2) would facially and substantially affect multiple existing constitutional articles and sections across multiple subject matters. It proposes changes to multiple enumerated constitutional rights of the accused—including the right to a speedy trial, the right to confront witnesses, the right against double jeopardy, the right to pretrial release, the right to post-conviction relief, and the right to appeal—as well as changes to the public's right of access to court proceedings.

First, Article I of our Constitution establishes rights that pertain to the relationship between the Commonwealth and its citizens. The majority of Article I rights proscribe certain conduct by the Commonwealth. The Proposed Amendment appears to turn Article I on its head, enabling victims, and possibly witnesses, to prevent individuals accused of crimes from asserting their fundamental constitutional rights to defend themselves.

While the Proposed Amendment guarantees rights to victims, the substantive effect on the Constitution would be to infringe on rights in several provisions of the Constitution, particularly Article I, Sections 9[23] and 14, which directly relate to Commonwealth's ability to take away an individual's freedoms.

---

[23] Article I, Section 9 provides:

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information,

**(Footnote continued on next page…)**

23

Voters' brief correctly identifies multiple constitutional rights that would be facially and substantially impacted by the Proposed Amendment. The affected rights include those conferred by the Confrontation Clause of Article I, Section 9[24] (as well as the right to a speedy trial) and the Right to Open Courts and Full Remedy found in Article I, Section 11.[25]

Voters' claim that the Proposed Amendment facially and substantially infringes on our Supreme Court's powers to prescribe rules governing the practice, procedure and conduct of all courts, is also well taken. In addition to its effect on discovery rules discussed above, the Proposed Amendment affects the courts in two further ways. First, a victim asserting the constitutional privacy right could demand closed proceedings, contrary to Article I, Section 11's requirement that the courts be open to all. Second, the Proposed Amendment gives victims the right to participate

---

a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

PA. CONST. art. I, § 9.

[24] Article I, Section 9 provides several independent and fundamental rights to the criminally accused, each of which is enforced separately and defined by its own body of law. Despite amendments over time, Article I, Section 9 "has consistently maintained the same *range of rights and privileges* to individuals accused of committing crimes." Ken Gormley, *The Pennsylvania Constitution: A Treatise on Rights and Liberties* 329 (2004) (emphasis added).

[25] Article I, Section 11 provides:

All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

PA. CONST. art. I, § 11.

24

and be heard at all stages of the criminal justice process. As the courts may not abridge, enlarge or modify the substantive rights of any litigant, the Proposed Amendment could impose on the courts' ability to maintain its calendar in an efficient and expeditious manner. Thus, the Proposed Amendment does not merely "touch" other parts of the Constitution when applied, but rather, that the Proposed Amendment facially, patently, and substantially affects other parts of the Constitution.

It is the judgment of this Court that the Proposed Amendment would facially and substantially violate Article XI, Section 1's separate vote and single-subject requirements and would facially and substantially impact other articles and sections of the Constitution, as discussed above. Because the Constitution mandates a separate vote on each proposed constitutional amendment, and the Proposed Amendment fails to satisfy this mandate, disenfranchisement will occur if the electorate must vote on the Proposed Amendment as a unitary proposal. The Proposed Amendment would prevent the electorate from voting "yes" to the Proposed Amendment provisions they approve and "no" to the Proposed Amendment provisions they oppose.

## C. Criteria for Permanent Injunction

To obtain relief in the form of a permanent injunction, Voters must establish a clear right to relief and that such relief is necessary to prevent a legal wrong for which there is no adequate remedy at law.[26] *Bd. of Revision of Taxes, City of Phila.*

---

[26] 1 Pa.C.S. § 903 provides that after certification of the results of the ballot question, the Governor shall issue a proclamation as to whether a majority of the electorate passed the proposed amendment. This section does not address the date upon which a proposed amendment becomes part of the Constitution. In the preliminary injunction proceeding, the parties disputed whether the Proposed Amendment would take effect automatically or whether it would require implementing legislation. This issue related solely to the question of whether passage of the Proposed **(Footnote continued on next page…)**

25

*v. City of Philadelphia*, 4 A.3d 610, 627 (Pa. 2010). Based on our analysis in Section B above, it is the judgement of the Court that Voters have sustained their burden of showing a clear right to relief and the absence of a remedy at law.

Voters must also establish that greater harm will result from denying injunctive relief than from granting it. *Kuznik v. Westmoreland Cnty. Bd. of Comm'rs*, 902 A.2d 476, 504 (Pa. 2006). It is the judgment of the Court that Voters have satisfied this burden as well and that the harm from denying the injunction they seek would substantially outweigh any harm that might result from granting the injunction.

Many of the rights to be afforded under the Proposed Amendment are already provided by Sections 201, 212-16, 501-02, and 701 of the Crime Victims Act.[27] *See* 18 P.S. §§ 11.201 (rights of victims); 11.212-.214 (responsibilities of state and local law enforcement agencies and Department of Corrections, local correctional facilities, and Pennsylvania Parole Board); 11.215 (responsibilities of Department of Human Services and mental health institutions under basic bill of rights); 11.216 (responsibilities of juvenile probation officers); 11.501 (pre-parole notification to victim); 11.502 (petitions to deny parole upon expiration of minimum sentence); and 11.701 (persons eligible for compensation from the Crime Victims Fund). Victims also have access to protections and services offered by other statutes, and the General

---

Amendment in the absence of a preliminary injunction would result in immediate harm. As immediacy of harm is not an element required to obtain permanent injunctive relief, we do not address that issue here.

[27] Act of November 24, 1998, P.L. 882, *as amended*, 18 P.S. §§ 11.101 – 11.5102.

Assembly is free to enact additional protections, provided it does so within the constraints of the Constitution.[28]

By contrast, as discussed in Section B above, denying the injunction would impinge on the constitutional rights of criminal defendants, the constitutional authority of the executive and judicial branches of state government, and the constitutional rights of the electorate to vote on each proposed change to the Constitution.

Therefore, Voters have met their burden of demonstrating that they have a clear right to relief, that such relief is necessary to prevent a legal wrong for which there is no adequate remedy at law, and that greater harm will result from denying injunctive relief than from granting it.

### D. Sufficiency of Ballot Question

In addition to their single-subject argument in Count I of the Petition, relating to the Proposed Amendment, Voters also contend the Ballot Question is constitutionally infirm in two ways. In Count II of the Petition, Voters contend the language of Article XI, Section 1 mandates that the entire text of the Proposed Amendment appear verbatim on the ballot, rather than just the Ballot Question, which is only a short summary.[29] Pet. for Review, ¶ 46. In Count III, Voters argue that even if use of a summary in a ballot question was constitutionally permissible, the Ballot Question, as prepared by the Secretary, does not "fairly, accurately, and clearly" apprise the electorate of the question(s) upon which it is asked to vote. *Stander*, 250 A.2d at 480. Because it is the judgment of the Court that Voters are

---

[28] In their brief, Moore Intervenors identify certain rights within the Crime Victims Act that have been upheld as constitutional.

[29] As discussed above, the Proposed Amendment is 749 words long, but the Ballot Question is just 73 words long. Both are set forth in full in the Appendix to this opinion.

entitled to relief on their claim regarding the Proposed Amendment's violation of the single-subject rule, we need not reach Voters' constitutional claims in Counts II and III regarding the Ballot Question at this time. *See Klein v. Council of Pittsburgh*, 643 A.2d 1107, 1110 (Pa. Cmwlth. 1994) (constitutional questions should not be reached if not necessary for decision).

## IV. Conclusion

Based on the foregoing discussion, it is the judgment of the Court that Voters have sustained their burden of demonstrating entitlement to declaratory relief and a permanent injunction on Count I of the Petition. Voters have established a clear right to relief and that such relief is necessary to prevent a legal wrong for which there is no adequate remedy at law. *Bd. of Revision of Taxes*, 4 A.3d at 627. Voters have also established that greater harm will result from denying injunctive relief than from granting it. *Kuznik*, 902 A.2d at 504.

Because the Court need not reach the claims asserted in Counts II and III of the Petition, those claims are dismissed as moot.

Therefore, as set forth above and in the accompanying order announcing the judgment of the Court, the Court grants Voters' application for summary relief in the form of declaratory and injunctive relief on Count I, and denies as moot the claims asserted in Counts II and III. The Court dismisses the Secretary's application for summary relief.

_____
ELLEN CEISLER, Judge

Judge Wojcik joins in this Memorandum Opinion in Support of the Order Announcing the Judgment of the Court.

28

**Ballot Question**

Shall the Pennsylvania Constitution be amended to grant certain rights to crime victims, including to be treated with fairness, respect and dignity; considering their safety in bail proceedings; timely notice and opportunity to take part in public proceedings; reasonable protection from the accused; right to refuse discovery requests made by the accused; restitution and return of property; proceedings free from delay; and to be informed of these rights, so they can enforce them?

*Proposed Constitutional Amendment: Crime Victim Rights (Marsy's Law)* https://www.dos.pa.gov/VotingElections/CandidatesCommittees/RunningforOffice /Pages/Joint-Resolution-2019-1.aspx (last visited January 6, 2021).

**Plain English Statement of the Office of Attorney General**

The proposed amendment, if approved by the electorate, will add a new section to Article I of the Pennsylvania Constitution. That amendment will provide victims of crimes with certain, new constitutional rights that must be protected in the same way as the rights afforded to individuals accused of committing a crime.

The proposed amendment defines "victim" as both a person against whom the criminal act was committed and any person who was directly harmed by it. The accused or any person a court decides is not acting in the best interest of a victim cannot be a victim.

Generally, the proposed amendment would grant victims the constitutional right to receive notice and be present and speak at public proceedings involving the alleged criminal conduct. It would also grant victims the constitutional right to receive notice of any escape or release of the accused and the right to have their safety and the safety of their family considered in setting the amount of bail and other release conditions. It would also create several other new constitutional rights, such as the right to timely restitution and return of property, the right to refuse to answer questions asked by the accused, and the right to speak with a government attorney.

Specifically, the proposed amendment would establish the following new rights for victims:
- To be treated with fairness and respect for the victim's safety, dignity and privacy

- To have the safety of the victim and the victim's family considered in fixing the amount of bail and release conditions for the accused
- To reasonable and timely notice of and to be present at all public proceedings involving the criminal or delinquent conduct
- To be notified of any pretrial disposition of the case
- With the exception of grand jury proceedings, to be heard in any proceeding where a right of the victim is implicated, including, but not limited to, release, plea, sentencing, disposition, parole and pardon
- To be notified of all parole procedures, to participate in the parole process, to provide information to be considered before the parole of the offender, and to be notified of the parole of the offender
- To reasonable protection from the accused or any person acting on behalf of the accused
- To reasonable notice of any release or escape of the accused
- To refuse an interview, deposition or other discovery request made by the accused or any person acting on behalf of the accused
- Full and timely restitution from the person or entity convicted for the unlawful conduct
- Full and timely restitution as determined by the court in a juvenile delinquency proceeding
- To the prompt return of property when no longer needed as evidence
- To proceedings free from unreasonable delay and a prompt and final conclusion of the case and any related post[-]conviction proceedings
- To confer with the attorney for the government
- To be informed of all rights enumerated in this section

The proposed amendment would allow a victim or prosecutor to ask a court to enforce these constitutional rights but would not allow a victim to become a legal party to the criminal proceeding or sue the Commonwealth or any political subdivision, such as a county or municipality, for monetary damages.

Once added to the Pennsylvania Constitution, these specific rights of victims cannot be eliminated, except by a judicial decision finding all or part of the amendment unconstitutional or the approval of a subsequent constitutional amendment. If approved, the General Assembly may pass a law to implement these new, constitutional rights,

ii

but it may not pass a law eliminating them. If approved, State and local governments will need to create new procedures to ensure that victims receive the rights provided for by the amendment.

*Id.*

**Joint Resolution No. 2019-1**
Proposing an amendment to the Constitution of the Commonwealth of Pennsylvania, providing for rights of victims of crime.

The General Assembly of the Commonwealth of Pennsylvania hereby resolves as follows:

Section 1. The following amendment to the Constitution of Pennsylvania is proposed in accordance with Article XI:

That Article I be amended by adding a section to read:

§ 9.1. Rights of victims of crime.

(a) To secure for victims justice and due process throughout the criminal and juvenile justice systems, a victim shall have the following rights, as further provided and as defined by the General Assembly, which shall be protected in a manner no less vigorous than the rights afforded to the accused: to be treated with fairness and respect for the victim's safety, dignity and privacy; to have the safety of the victim and the victim's family considered in fixing the amount of bail and release conditions for the accused; to reasonable and timely notice of and to be present at all public proceedings involving the criminal or delinquent conduct; to be notified of any pretrial disposition of the case; with the exception of grand jury proceedings, to be heard in any proceeding where a right of the victim is implicated, including, but not limited to, release, plea, sentencing, disposition, parole and pardon; to be notified of all parole procedures, to participate in the parole process, to provide information to be considered before the parole of the offender, and to be notified of the parole of the offender; to reasonable protection from the accused or any person acting on behalf of the accused; to reasonable notice of any release or escape of the accused; to refuse an interview, deposition or other discovery request made by the accused or any person acting on behalf of the accused; full and timely restitution from the person or entity convicted for the unlawful conduct; full

iii

and timely restitution as determined by the court in a juvenile delinquency proceeding; to the prompt return of property when no longer needed as evidence; to proceedings free from unreasonable delay and a prompt and final conclusion of the case and any related post[-]conviction proceedings; to confer with the attorney for the government; and to be informed of all rights enumerated in this section.

(b)  The victim or the attorney for the government upon request of the victim may assert in any trial or appellate court, or before any other authority, with jurisdiction over the case, and have enforced, the rights enumerated in this section and any other right afforded to the victim by law. This section does not grant the victim party status or create any cause of action for compensation or damages against the Commonwealth or any political subdivision, nor any officer, employee or agent of the Commonwealth or any political subdivision, or any officer or employee of the court.

(c)  As used in this section and as further defined by the General Assembly, the term "victim" includes any person against whom the criminal offense or delinquent act is committed or who is directly harmed by the commission of the offense or act. The term "victim" does not include the accused or a person whom the court finds would not act in the best interests of a deceased, incompetent, minor or incapacitated victim.

Section 2.  (a)  Upon the first passage by the General Assembly of this proposed constitutional amendment, the Secretary of the Commonwealth shall proceed immediately to comply with the advertising requirements of section 1 of Article XI of the Constitution of Pennsylvania and shall transmit the required advertisements to two newspapers in every county in which such newspapers are published in sufficient time after passage of this proposed constitutional amendment.

(b)  Upon the second passage by the General Assembly of this proposed constitutional amendment, the Secretary of the Commonwealth shall proceed immediately to comply with the advertising requirements of section 1 of Article XI of the Constitution of Pennsylvania and shall transmit the required advertisements to two newspapers in every county in which such newspapers are published in sufficient time after passage of this

proposed constitutional amendment. The Secretary of the Commonwealth shall submit this proposed constitutional amendment to the qualified electors of this Commonwealth at the first primary, general or municipal election which meets the requirements of and is in conformance with section 1 of Article XI of the Constitution of Pennsylvania and which occurs at least three months after the proposed constitutional amendment is passed by the General Assembly.

*Id.* (emphasis deleted); H.B. 276, 203d Gen. Assemb., Reg. Sess. (Pa. 2019-2020).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

League of Women Voters of          :
Pennsylvania and Lorraine Haw,     :
          Petitioners :
                        : No. 578 M.D. 2019
         v.              :
                        : Argued: June 10, 2020
Kathy Boockvar, the Acting Secretary :
of the Commonwealth,               :
          Respondent :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION IN SUPPORT OF ORDER ANNOUNCING THE
JUDGMENT OF THE COURT
BY JUDGE McCULLOUGH                  FILED:  January 7, 2021


        In the interest of serving justice, it is imperative to recognize certain rights and interests of crime victims in the criminal justice system.  Understandably, then, many voters may see value in enshrining such rights in our Constitution.  When the citizens of our Commonwealth are asked to decide whether they wish to amend the fundamental law of the land, however, they are entitled to know not only what they are voting for, but also whether their decision will affect other constitutional provisions.  Amending the Constitution is a momentous decision, and our citizens

_____

[1] The decision in this case was reached before January 4, 2021, when Judge Leavitt served as President Judge.

have a right to express their will with regard to each provision by which they will be governed. Our Constitution recognizes this. "When two or more amendments shall be submitted they shall be voted upon separately." PA. CONST. art. XI, §1. Voters must not be given a Hobson's choice—asked to decide whether to accept disfavored amendments along with those they find salutary, or instead to vote "nay" *in toto*.

The ballot question concerning the proposed Victims' Rights Amendment (the Proposed Amendment) offered voters a constitutional "package deal." On its face, the Proposed Amendment encompasses a broad array of laudable and salutary provisions. While ostensibly related to a common theme, it seems clear to me that the Proposed Amendment contemplates not only the addition of new rights—many arguably distinct in their subject matter—but also the alteration or diminution of existing, longstanding rights of the accused. I agree with Judge Ceisler's opinion that the Proposed Amendment thus included "two or more amendments," and that such amendments "shall be voted upon separately," PA. CONST. art. XI, §1. I disagree, however, with significant portions of Judge Ceisler's analysis of the applicable constitutional standard.

In *Grimaud v. Commonwealth*, 865 A.2d 835 (Pa. 2005), our Supreme Court articulated the governing standard for assessing whether a ballot question violates the separate vote requirement of Article XI, Section 1. We apply a "subject matter test" to determine whether the proposed changes are "sufficiently interrelated," and further analyze "the ballot question's substantive [e]ffect on the Constitution" through an examination of its "content, purpose, and effect." *Id.* at 841-42; *see also Pennsylvania Prison Society v. Commonwealth*, 776 A.2d 971, 980 (Pa. 2001) (plurality) (noting that ballot question in *Bergdoll v. Kane*, 731 A.2d 1261 (Pa. 1999), was examined by considering "the content, purpose, and effect of the

proposed amendments"). If a proposed amendment "facially affect[s] other parts of the Constitution," then separate votes are required under Article XI, Section 1. *Grimaud*, 865 A.2d at 842 (emphasis omitted). "The question is whether the single ballot question patently affects other constitutional provisions, not whether it implicitly has such an effect . . . ." *Id.*

Judge Ceisler summarizes that the "Proposed Amendment facially addresses a wide range of subject matters including bail, discovery, due process, restitution, the right to privacy, and evidence control, all under the auspices of connecting them to victims' rights." *League of Women Voters v. Boockvar* (Pa. Cmwlth., No. 578 M.D. 2019, filed January 7, 2021), slip op. at 21 (Ceisler, J., mem. op. in support of order announcing the judgment of the Court). Numerous of the Proposed Amendment's terms relate to the rights of victims to be notified of certain events that occur within the criminal process and to participate in the relevant proceedings. It is easy to see, for example, how property-related matters such as restitution and the return of property used as evidence may be viewed as implicating subject matter that is distinct from the provisions relating to notice and participation. In my view, these differing matters are lacking sufficient "interdependence," *Grimaud*, 865 A.2d at 841 (quoting *Pennsylvania Prison Society*, 776 A.2d at 984 (Saylor, J., concurring)), to truly fall within the ambit of a single subject. For instance, the provisions relating to notice and participation do not depend upon the provisions relating to restitution, and vice versa. Where our Supreme Court in *Grimaud* concluded that the contemplated changes to bail procedure were "sufficiently interrelated" because "all concerned disallowance of bail to reinforce

public safety," *id.*, that same interrelation is not present in the Proposed Amendment.[2]

Naturally, one might resort to the suggestion that the disparate provisions all simply pertain to the subject of "victims' rights." Yet, as demonstrated by the very text of the Proposed Amendment, the concept of victims' rights can and does encompass a wide range of specific actions and restrictions throughout the criminal process. And as our Supreme Court observed over a century ago when addressing the similar context of the legislative single-subject requirement of Article III, Section 3, "no two subjects are so wide apart that they may not be brought into a common focus, if the point of view be carried back far enough." *Payne v. School District of Borough of Coudersport*, 31 A. 1072, 1074 (Pa. 1895) (*per curiam*); *see also City of Philadelphia v. Commonwealth*, 838 A.2d 566, 585-90 (Pa. 2003)

---

[2] President Judge Leavitt asserts that I have not conducted an analysis of the "interdependence" of the provisions of the Proposed Amendment. *See League of Women Voters*, slip op. at 5 (Leavitt, P.J., mem. op. in opposition to order announcing the judgment of the Court). To the contrary, I have undertaken this analysis here. President Judge Leavitt quotes from *Grimaud* to suggest that the applicable standard in this regard involves assessment of whether the provisions at issue "constitute a consistent and workable whole on the general topic embraced." *Id.* However, that language, taken from then-Justice Saylor's concurrence in *Pennsylvania Prison Society*, was one of several standards used by other state courts, which *Grimaud* cited for persuasive value. *Pennsylvania Prison Society*, 776 A.2d at 984 n.1 (Saylor, J., concurring) (quoting *Korte v. Bayless*, 16 P.3d 200, 203-05 (Ariz. 2001)). Other cited standards used the phrases "rational linchpin" or "germane to the accomplishment of a single objective." *Id.* (quoting *Clark v. State Canvassing Board*, 888 P.2d 458, 462 (N.M. 1995); *Sears v. State*, 208 S.E.2d 93, 100 (Ga. 1974)). Although our Supreme Court in *Grimaud* noted the persuasive value of these various formulations, the test that the Court expressly adopted was whether proposed changes are "sufficiently interrelated . . . to justify inclusion in a single question." *Grimaud*, 865 A.2d at 841. The *Grimaud* Court held that the proposed changes before it satisfied that standard because "all concerned disallowance of bail to reinforce public safety." *Id.* For the reasons explained above, the Proposed Amendment does not exhibit a similar degree of interrelation. To the extent that President Judge Leavitt contends otherwise, her opinion does not detail the purported interrelation of the Proposed Amendment's disparate provisions.

PAM - 4

(finding proposed subject of "municipalities" too broad to unify numerous disparate statutory provisions for purposes of Article III single-subject requirement).

Even assuming that the new rights set forth in the Proposed Amendment may be deemed to fall within a common subject of "victims' rights," the Proposed Amendment still fails the *Grimaud* test. Article XI, Section 1 is clear that "two or more" amendments require separate votes. PA. CONST. art. XI, §1. Under *Grimaud*, a facially singular amendment may require separate votes if it patently affects other constitutional provisions. *Grimaud*, 865 A.2d at 842. In adopting the reasoning of now-Chief Justice Saylor's concurrence in *Pennsylvania Prison Society*, the Court in *Grimaud* established an analysis that looks to the amendment's "substantive affect on the Constitution, examining the content, purpose, and effect." *Id.* (citing *Pennsylvania Prison Society*, 776 A.2d at 980 (plurality)). Thus, as I understand *Grimaud* and the language of Article XI, Section 1, Petitioners here need only show one patent effect upon another constitutional provision in order to demonstrate that the ballot question was constitutionally flawed, and that the provisions of the Proposed Amendment could not be effectuated with a single vote. Even granting that "implicit" effects are insufficient, *Grimaud*, 865 A.2d at 842, one provision of the Proposed Amendment makes abundantly clear that Petitioners can carry this burden.

Article I, Section 9 of our Constitution provides that a criminal defendant has rights "to demand the nature and cause of the accusation against him," "to be confronted with the witnesses against him," and "to have compulsory process for obtaining witnesses in his favor." PA. CONST. art. I, §9. Among the provisions of the Proposed Amendment is one stating that a victim of a crime—defined to include both "any person against whom the criminal offense or delinquent act is

committed" and any person "who is directly harmed[3] by the commission of the offense or act"—shall have the right "to refuse an interview, deposition or other discovery request made by the accused or any person acting on behalf of the accused." *See League of Women Voters*, Appendix (Ceisler, J., mem. op. in support of order announcing the judgment of the Court). This language imposes a clear limitation upon a criminal defendant's right to obtain potentially favorable witnesses, testimony, and materials, and, thus, would serve as a direct barrier to the accused's ability to gather exculpatory evidence. Because there is manifest tension between this portion of the Proposed Amendment and the longstanding protections of Article I, Section 9, I believe this is precisely the sort of "patent" effect upon another constitutional provision that *Grimaud* envisioned. *Grimaud*, 865 A.2d at 842. Clearly, unlike the bail amendments in *Grimaud* that did "not substantively affect the right to defend one's self, the right to be free from excessive bail, or the reservation that Article I rights remain inviolate," *id.*, here the longstanding constitutional rights of Article I, Section 9 are substantively impacted. In fact, the right to refuse an interview, deposition, or other discovery request is in *direct conflict* with the accused's exercise of Article I, Section 9 rights to be confronted with witnesses against him and to have compulsory process to obtain witnesses in his favor. It is in direct conflict with the ability of an accused to know the nature and cause of the accusation against him. In other words, this portion of the Proposed

---

[3] I note that Judge Ceisler's opinion states that the definition of "victim" includes individuals "*directly impacted*" by a crime. *League of Women Voters*, slip op. at 17 & n.19 (Ceisler, J., mem. op. in support of order announcing the judgment of the Court) (emphasis in original). However, the definition uses the term "harmed," rather than "impacted." Regardless, because the scope of such "harm" is not delineated, I agree with Judge Ceisler's suggestion that it may be difficult to determine precisely which individuals would be entitled to claim the protections of the Proposed Amendment in a given case. *Id.* at 17 n.19.

Amendment would interfere, hinder, and prevent the accused from exercising his full Article I, Section 9 rights.

We need not speculate or engage in hypotheticals on this matter, for on this point, the language is plain. Thus, to the extent that President Judge Leavitt contends that Petitioners, and by the extension the present opinions in support of the judgment, have offered only speculation concerning potential effects upon existing constitutional rights, I must disagree. That said, I agree with President Judge Leavitt that portions of Petitioners' arguments appear to rely upon "implicit" effects, rather than "patent" effects. *See League of Women Voters*, slip op. at 5 (Leavitt, P.J., mem. op. in opposition to order announcing the judgment of the Court) (quoting *Grimaud*, 865 A.2d at 842). Judge Ceisler's opinion's reliance upon "implicit" effects is clear in the portions of its analysis which suggest, for example, that increased litigation over the scope of the Proposed Amendments will "clog the courts' dockets, delaying dispositions and trials," thus potentially impacting defendants' constitutional and rule-based rights to a speedy trial under Article I, Section 9 and Pa.R.Crim.P. 600. *League of Women Voters*, slip op. at 18 (Ceisler, J., mem. op. in support of order announcing the judgment of the Court). Those concerns may be well-founded, but this is the sort of downstream consequence that, in my view, would be classified as "implicit," rather than "patent," for purposes of the *Grimaud* standard. Hence, I must depart from Judge Ceisler's opinion here as well.

Nonetheless, I cannot agree with President Judge Leavitt's analysis either. It appears that President Judge Leavitt would require any potential effect of the Proposed Amendment to be determined only through real-world application. *See League of Women Voters*, slip op. at 6 (Leavitt, P.J, mem. op. in opposition to order announcing the judgment of the Court) ("[T]he time and place to test the limits of

the crime victim's right to 'privacy and dignity' is in a real criminal trial, not in an imagined one that may never happen."). President Judge Leavitt thus suggests that all we have before us are "fictional scenarios" that reveal an absence of a "real controversy" suitable for resolution via a declaratory judgment. *Id*. at 5. However, this proposition ignores the fact that we are asked to determine whether the Proposed Amendment may be added to the Constitution in the first place. By the time that it could be applied to a "real criminal trial," it would be too late to answer that question, because it necessarily would already be part of our Constitution. This theory thus strikes me as inconsistent with our precedent, in that it would render the Proposed Amendment effectively immune from challenge.

As discussed above, there is nothing implicit about the effect of the Proposed Amendment's right-of-refusal provision upon Article I, Section 9. Particularly in light of the historical significance of the Article I, Section 9 rights—first enshrined in Pennsylvania's original Constitution of 1776—their importance to the truth-determining process, and their role in protecting individuals from arbitrary and oppressive government action, I believe that the voters of Pennsylvania were entitled to separately consider whether they desired to limit these rights alongside the adoption of the new positive rights contained within the Proposed Amendment.

It may be debatable whether "victims' rights" is a subject narrow enough to allow many of the Proposed Amendment's varying provisions to be considered in a single vote under Article XI, Section 1.[4] Regardless, it is clear to me

---

[4] Given their breadth and the number of different matters that they would touch upon, it seems to me that the changes sought in the Proposed Amendment would be best effectuated by calling a constitutional convention—the mechanism through which complex and multi-faceted changes to the Constitution are to be debated and executed. *See Pennsylvania Prison Society v. Commonwealth*, 727 A.2d 632, 634 (Pa. Cmwlth. 1999), *rev'd on other grounds*, 776 A.2d 971 (Pa. 2001) (plurality) (amendment process "is reserved for simple, straightforward changes to the **(Footnote continued on next page…)**

that, in addition to providing new rights to crime victims, the Proposed Amendment also would "patently affect" existing rights of the accused under Article I, Section 9. *Grimaud*, 865 A.2d at 842. This alone means that the Proposed Amendment encompassed "two or more amendments" that required separate votes. PA. CONST. art. XI, §1.

Accordingly, I support the judgment of the Court.

PATRICIA A. McCULLOUGH, Judge

---

Constitution" and "should not be used to circumvent a constitutional convention, the process for making complex changes to the Constitution"). The Legislature instead chose to pursue the amendment process, but such amendments must comply with Article XI, Section 1 and its separate-vote requirement, as expounded in *Grimaud*.

For many of the same reasons discussed herein, I further agree with Petitioners with regard to their alternative basis for relief—that the ballot question failed to "fairly, accurately and clearly" apprise voters of the issue to be voted on. *Stander v. Kelley*, 250 A.2d 474, 480 (Pa. 1969); *see also Sprague v. Cortes*, 145 A.3d 1136, 1142 (Pa. 2016) (Baer, J.) (finding that ballot question "clearly conveyed the proposed constitutional amendment to the electorate"). Although the ballot question at issue here summarized numerous features of the Proposed Amendment, Petitioners highlight that the ballot question made no mention of numerous new rights to be afforded to crime victims and their families, including the consideration of the safety of a victim's family in setting release conditions, the right to be notified of any pretrial disposition of a case, the right to prompt and final conclusion of cases and post-conviction proceedings, and the right to confer with attorneys for the government. (Petitioners' Brief in Support of Application for Summary Relief at 52). Consistent with my discussion of the single-subject inquiry, the difficulty with the Proposed Amendment is that it simply embraces too many disparate matters to effectively convey its import to voters within the 75 words mandated by statute. Section 1110(b) of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §3010(b) ("Each question to be voted on shall appear on the ballot labels, in brief form, of not more than seventy-five words . . . ."). I thus differ with President Judge Leavitt on this point as well, for I do not believe that "grant[ing] certain rights to crime victims" is a description sufficient to inform voters of the breadth of constitutional changes contemplated. *League of Women Voters*, slip op. at 2-3 n.1 (Leavitt, P.J, mem. op. in opposition to order announcing the judgment of the Court).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

League of Women Voters of : 
Pennsylvania and Lorraine Haw, : 
                 Petitioners : 
        : 
       v. : No. 578 M.D. 2019
        : Argued: June 10, 2020
Kathy Boockvar, the Acting : 
Secretary of the Commonwealth, : 
              Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION IN OPPOSITION TO ORDER ANNOUNCING THE JUDGMENT OF THE COURT

BY PRESIDENT JUDGE LEAVITT              FILED: January 7, 2021

The League of Women Voters of Pennsylvania and Lorraine Haw (collectively, League of Women Voters) request a declaratory judgment that the ballot resolution to expand Article I of the Pennsylvania Constitution to declare a right in crime victims violates the single amendment requirement of Article XI, Section 1 of the Pennsylvania Constitution. The League of Women Voters also requests a permanent injunction to prevent Kathy Boockvar, the Secretary of the Commonwealth, from tabulating and certifying the votes cast in November 2019 on the proposed amendment. Because the League of Women Voters has proffered only speculation on how the newly declared right will operate in the future, there is

_____

[1] The decision in this case was reached before January 4, 2021, when Judge Leavitt served as President Judge.

no real controversy before the Court.  I would grant summary relief to Secretary Boockvar and deny summary relief to the League of Women Voters.

With respect to a "Proposal of Amendments by the General Assembly and their Adoption," Article XI of the Pennsylvania Constitution states as follows:

> Section 1.  Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years. *When two or more amendments shall be submitted they shall be voted upon separately.*

PA. CONST. art. XI, §1 (emphasis added).  The proposed amendment to Article I of the Pennsylvania Constitution has followed each procedural step set forth above in Article XI, Section 1 with precision.[2]   Critical here is the directive that "[w]hen

---

[2] I reject the League of Women Voters' alternate argument that the ballot question was defective because it "does not capture all of the components" of the proposed amendment.  League of Women Voters' Brief in Support of Application for Summary Relief at 52.  That is not the

MHL- 2

two or more amendments shall be submitted they shall be voted upon separately." *Id.*

The ballot question voted upon in November of 2019 offered a single amendment to our Constitution to add a new right to those listed in the "Declaration of Rights" found in Article I. PA. CONST. art. I. This amendment, known as "Marsy's Law," creates a right in crime victims and does not patently delete or revise existing provisions in the Pennsylvania Constitution. The League of Women Voters has not demonstrated otherwise. Instead, it has offered only hypotheticals on the various ways this newly declared right might impact the rights of a criminal defendant in some case, in some time and in some place.

In an action under the Declaratory Judgments Act,[3] the plaintiff must present an actual controversy, which is defined as "imminent and inevitable litigation" initiated by persons with a "direct, substantial and present interest" in that litigation. *Stilp v. Commonwealth*, 910 A.2d 775, 782 (Pa. Cmwlth. 2006) (citing *Wagner v. Apollo Gas Company*, 582 A.2d 364 (Pa. Super. 1990)). Courts "resolve conflicts after they arise." *Gibson v. Commonwealth*, 415 A.2d 80, 84 (Pa. 1980). It is beyond the jurisdiction of our courts, appellate and original, to use the Declaratory Judgments Act to issue advisory opinions. *See In re Condemnation by Department of Transportation*, 515 A.2d 102, 106 (Pa. Cmwlth. 1986); *Sheppard v. Old Heritage Mutual Insurance Company*, 414 A.2d 1109, 1114 (Pa. Cmwlth. 1980). Stated otherwise,

---

standard. Only where the ballot question is so confusing that "voters cannot intelligently express their intentions" will the court invalidate the ballot question. *Oncken v. Ewing*, 8 A.2d 402, 404 (Pa. 1939). The ballot question here was clear that the amendment will "grant certain rights to crime victims …." Petition for Review, Exhibit A, Ballot Question.

[3] 42 Pa. C.S. §§7531-7541.

> [a] declaratory judgment must not be employed to determine rights *in anticipation of events which may never occur* or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic.

*Gulnac by Gulnac v. South Butler County School District*, 587 A.2d 699, 701 (Pa. 1991) (citations omitted) (emphasis added).

Lorraine Haw is "concerned" about how Marsy's Law will affect her request for a pardon if, or when, the "victim" of her crime should object to her request. Petition for Review, ¶¶14, 15. The League of Women Voters repeatedly posits what "potentially," "may," "might," "could," or "would" occur to Haw and others should Secretary Boockvar not be restrained from tabulating and certifying the votes cast last November. These supposed events may, or may not, take place.

The League of Women Voters states, for example, that an accused's right to compulsory process "*would be* gravely affected" under the proposed amendment because a victim would have the right to "refuse an interview, deposition or other discovery request made by the accused or any person acting on behalf of the accused." League of Women Voters' Brief in Support of Application for Summary Relief at 32-33 (emphasis added) (quotation omitted). This argument assumes that the defendant will not be able to obtain assistance of the court to compel discovery needed for a fair criminal trial. In like manner, the League of Women Voters argues that because the safety of a crime victim may be considered in fixing the amount of bail and the release conditions for the accused, the "*presumption* that a defendant is entitled to pretrial release" is thereby altered. *Id.* at 34-35 (emphasis added). Courts have broad discretion "[t]o determine whether to release a defendant [] and what conditions" to impose on release. PA.R.CRIM.P. 523(A). The Pennsylvania Constitution does not presently prohibit courts from

considering the safety of a crime victim in making the decision on a criminal defendant's pre-trial release.

These examples illustrate why declaratory relief requires "imminent and inevitable litigation" brought by persons with a "direct, substantial and present interest" in that litigation. *Stilp*, 910 A.2d at 782. Instead, the League of Women Voters offers fictional scenarios that assume how victims will exercise their Article I right to the disadvantage of criminal defendants and how courts might decide conflicts between the rights of victims and the rights of criminal defendants.

The League of Women Voters argues that the proposed amendment "implicitly" amends more than one provision of the Pennsylvania Constitution. However, our Supreme Court has directed that "merely because an amendment may possibly impact other provisions does not mean it violates the separate vote requirement." *Grimaud v. Commonwealth*, 865 A.2d 835, 842 (Pa. 2005) (quotation omitted). Every amendment must have some impact on other provisions of the Constitution, or it would be surplusage. In *Shapp v. National Gettysburg Battlefield Tower, Inc.*, 311 A.2d 588 (Pa. 1973), for example, our Supreme Court observed that the Environmental Rights Amendment, PA. CONST. art. I, §27, impacted property rights protected by the United States and Pennsylvania Constitutions. To evaluate a constitutional amendment against Article XI, Section 1,

> [t]he test to be applied is not merely whether the amendments might touch other parts of the Constitution when applied, but rather, whether the amendments *facially* affect other parts of the Constitution. Indeed, it is hard to imagine some amendment that would not have some arguable effect on another provision; clearly the framers knew amendments would occur and provided a means for that to happen. *The question is whether a*

> *single ballot question patently affects other constitutional provisions, not whether it implicitly has such an effect*[.]

*Grimaud*, 865 A.2d at 842 (emphasis added). Amendments that are "sufficiently interrelated" may be presented "to the electorate in a single question." *Id*. at 841. The ballot question in *Grimaud* that proposed to amend the constitutional requirements on bail did so by amending two provisions of the Constitution that each related to bail. This ballot question was held valid under Article XI, Section 1 because it was interrelated.

The opinions of Judges Ceisler and McCullough do not undertake an analysis of the interdependence of the proposed amendment, which is necessary before it can be concluded that the ballot question required more than a single vote. In examining the "common-purpose formulation," we look to whether the parts "constitute a consistent and workable whole on the general topic embraced." *Id*. Instead of undertaking this analysis, their opinions examine the hypothetical effects of a crime victim's right upon a criminal defendant's right to a fair trial.

Even so, the examples offered by the League of Women Voters to demonstrate how a crime victim's rights might impact a criminal defendant's due process rights do not withstand close scrutiny. The League of Women Voters believes, for example, that a victim's right to "privacy and dignity" may affect the scope and manner of the criminal defendant's ability to cross-examine the victim. First, cross-examination is not presently unbounded but, rather, subject to "the discretion of the trial court." *Commonwealth v. Skibicki*, 586 A.2d 446, 447 (Pa. Super. 1991). Second, the time and place to test the limits of the crime victim's right to "privacy and dignity" is in a real criminal trial, not in an imagined one that may never happen.

Because a declaratory judgment should never issue in anticipation of events that may never occur, I would deny summary relief to the League of Women Voters. The proposed expansion of Pennsylvania's Declaration of Rights to establish a right for crime victims was debated and agreed to "by the two Houses" before being presented to the electorate for a vote in November of 2019. PA. CONST. art. XI, §1. The centerpiece of our Declaration of Rights is that "[a]ll power is inherent in the people.…" PA. CONST. art. I, §2. The judgment the Court enters today deprives the people of this power on the strength of no more than speculation. I would allow the process to go forward and grant summary relief to the Secretary of the Commonwealth.


_____
MARY HANNAH LEAVITT, President Judge


Judge Fizzano Cannon joins in this Memorandum Opinion in Opposition to Order Announcing the Judgment of the Court.